CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

4/27/2022

JULIA C. DUDLEY, CLERK
BY:   s/ A. Little
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

**JANE DOE,**

                **Plaintiff,**

**v.**

**LIBERTY UNIVERSITY, INC.,**

    **Serve:**
    **David M. Corry, Registered Agent**
    **1971 University Blvd.**
    **Lynchburg, VA 24515**

**and**

**JORDAN DIGGES,**
**2001 Hunters Trail**
**Norfolk, VA 23518**

**and**

**OASIS2000, LLC,**

    **Serve:**
    **John R. Alford, Jr., Registered Agent**
    **2306 Atherholt Rd.**
    **Lynchburg, VA 24501**

**and**

**BLUE2000, LLC,**

    **Serve:**
    **John R. Alford Jr., Registered Agent**
    **2306 Atherholt Rd.**
    **Lynchburg, VA 24501,**

**and**

**SAGE COMMUNITIES, LLC d/b/a LANGLEY PROPERTIES,**

    **Serve:**

**Civil Action No:**  6:22CV00021

**JURY TRIAL DEMANDED**

**John R. Alford, Jr., Registered Agent**
**2306 Atherholt Rd.**
**Lynchburg, VA 24501**

**and**

**LP APARTMENTS, LLC d/b/a LANGLEY**
**PROPERTIES,**

    **Serve:**
    **John R. Alford, Jr., Registered Agent**
    **645 Oakley Ave.**
    **Lynchburg, VA 24501**
                    **Defendants.**

## COMPLAINT

On April 27, 2021, Plaintiff Jane Doe, a Liberty University student, was brutally raped and sexually assaulted by a fellow Liberty student, Jordan Digges, on the premises of an off-campus student housing complex called The Oasis, A Vue Student Community. Liberty University received prompt notice of the rape and assault, but failed to provide Plaintiff with services or reasonable accommodations required under Title IX of the Education Amendments of 1972, the Rehabilitation Act, and other laws as described below.

Despite their knowledge of the incident, Liberty failed to investigate the matter and did not take any action or protective measures in response. Instead, Liberty demonstrated systematic deliberate indifference, retaliated against the Plaintiff, and perpetuated a sexually hostile and dangerous environment on and around campus. As a result of Liberty's conduct, Plaintiff Jane Doe suffered immense damages. Her academic standing suffered, she was ostracized from the university community, accused by the administration of violating the "Liberty Way" (Liberty's code of student conduct), lived in regular fear of encountering her assailant on and around campus, and dealt with daily mental, emotional, and psychological trauma. Ultimately, Plaintiff was forced out of Liberty University.

Plaintiff Jane Doe now brings this Complaint for damages and states the following:

## THE PARTIES

1.      Plaintiff Jane Doe is a natural person, a citizen of the United States, and a resident of the State of Texas. At all times relevant hereto, Plaintiff was a student at Liberty University.

2.      Defendant LIBERTY UNIVERSITY, INC. (hereafter, "Liberty" or "Liberty University") is a private, Christian university located in the City of Lynchburg, Virginia with an address of 1971 University Boulevard, Lynchburg, Virginia 24515.  At all times relevant hereto, Liberty University was a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a) and 29 U.S.C. § 794.

3.      At all times relevant hereto, Defendant JORDAN DIGGES (hereafter, "Jordan Digges" or "Digges") was a resident and domiciliary of the Commonwealth of Virginia and a student of Liberty University.

4.      Defendant OASIS2000, LLC (hereafter, "Oasis2000") is a Virginia limited liability company with a principal place of business located at 102 Oakley Avenue, Suite 506, Lynchburg, Virginia 24501.  Oasis2000 owns, manages, and/or operates the student housing complex known as The Oasis, A Vue Student Community (hereafter, "The Oasis") located at 40 Oasis Way, Lynchburg, Virginia.

5.      Defendant BLUE2000, LLC (hereafter, "Blue2000") is a Virginia limited liability company with a principal place of business located at 102 Oakley Avenue, Suite 506, Lynchburg, Virginia 24501.  Blue2000 owns, manages, and/or operates The Oasis.

6.      Defendant SAGE COMMUNITIES, LLC d/b/a LANGLEY PROPERTIES (hereafter "Sage Communities") is a Virginia corporate entity with a principal place of business located at 200 Paddington Court, Lynchburg, VA 24503.  At all times relevant hereto, Sage

3

Communities did business under the fictitious name Langley Properties, and owned, managed, and/or operated The Oasis.

7.      Defendant LP APARTMENTS, LLC d/b/a LANGLEY PROPERTIES (hereafter "LP Apartments") is a Virginia limited liability company with a principal place of business located at 645 Oakley Avenue, Lynchburg, Virginia 24501.  At all times relevant hereto, LP Apartments did business under the fictitious name Langley Properties, and owned, managed, and/or operated The Oasis.

8.      Defendants Sage Communities and LP Apartments are hereafter collectively referred to as "Langley Properties."

### The Relationship between Plaintiff, Defendants, and The Oasis

9.      The Oasis operates as *de facto* Liberty student housing and is comprised entirely of students.

10.     The Oasis is a "students only" off-campus housing complex.[1]

11.      The Oasis publicly states the following:[2]

> The Oasis provides premier off-campus housing for **Lynchurg area students**. Our community was designed specifically with students in mind and features a clubhouse with study and game rooms, outdoor courtyards, and so much more.

12.     The Oasis advertises itself as "possibly the best student community in America."[3]

---

[1] *See* https://vuecommunities.com/, Video, "Welcome To The Oasis.

[2] The Vue, Student Living, *available at* https://vuecommunities.com/the-oasis-1.

[3] Video, "Meet the Owners of VUE Student Living Communities!", *available at* https://www.youtube.com/watch?v=7QXS7i9IT0k.

13. The leasing schedule for The Oasis revolves around the Liberty University school year.

14. Liberty University, on its website, extensively advertises The Oasis and facilitates viewings of the property and allows students to submit lease applications through Liberty's online housing portal.

15. Liberty provides photographs of The Oasis and communicates the following to students:[4]

## Apartment Description

The Oasis Apartments

• STUDENTS ONLY & Risk Free Lease Reservation
• New, nice, and purposefully designed for students.
• Sign up now for August
• Huge discount for groups of $1,200 each
• Limited liability lease

Rent is all-inclusive!
Furniture, Cable Internet, Water, Sewer, Trash, and Electricity

16. Upon information and belief, Liberty derives a financial benefit from its association with and referral of students to The Oasis.

17. Plaintiff was referred by Liberty to apply for residence at The Oasis, and Liberty facilitated her lease application. Plaintiff signed a "Student Housing Lease Agreement" with The Oasis on January 13, 2021.

18. In order to be accepted at The Oasis, the Plaintiff was required to provide proof of enrollment at Liberty University. Her Student Housing Lease Agreement stipulated that it "it is

---

[4] *Id.*

determined that the lease holder is no longer a student, the lease holder . . . will not be able to occupy the apartment."

19.     Plaintiff was a tenant and resident of The Oasis during the spring semester of the 2021 school year.

20.     Langley Properties operates, owns, and manages apartment complexes in and around Lynchburg, Virginia, including The Oasis.

21.     In addition to The Oasis, Langley Properties owns, operates, and manages two other "Vue" student housing complexes: The Vue at College Square and The Vue at Cornerstone.

22.     Langley Properties began leasing Vue properties to Liberty students in 2013, beginning with the Vue at College Square complex.  Chris Langley, the owner of Langley Properties, "began researching off-campus student housing in other college towns and decided to replicate that model for Liberty University students."[5]

23.     In February 2014, over 14 acres of land was sold by an entity called Liberty Ridge, LLC to Defendant Blue2000 for the purpose of building The Oasis.  Upon information and belief, Liberty Ridge, LLC was at all relevant times owned and/or operated and/or managed by Liberty University.

24.     Upon information and belief, Defendants Blue2000 and Oasis2000 are entities formed by, organized by, owned by, operated by, and/or associated with Langley Properties and their agents and officers, and were created for the purpose of developing, operating, and/or managing The Oasis.

---

[5] Liberty Champion, "The Vue Begins Leasing," Jan. 29, 2013, *available at* https://www.liberty.edu/champion/2013/01/the-vue-begins-leasing/.

25.     At all times relevant hereto, Defendants Blue2000, Oasis2000, and Langley Properties owned, operated, and/or managed The Oasis, acted in the capacity of a landlord for student tenants, and were responsible for, among other services, providing security services for residents on the premises.

## JURISDICTION AND VENUE

26.     This action arises under, *inter alia*, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*., which prohibits educational discrimination on the basis of sex.

27.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which confers upon United States District Courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

28.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives United States District Courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation under color of any State Law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

29.     This Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they derive from the same nucleus of operative facts as Plaintiff's other claims herein, are likely to involve the same evidence and parties, and therefore fall under this Court's supplemental jurisdiction to promote convenience and judicial economy.

30.     This Court has personal jurisdiction over Defendants Liberty University, Oasis2000, Blue2000, and Langley Properties on the grounds they are and were, at all relevant times conducting business within the Commonwealth of Virginia.

31.     This Court has personal jurisdiction over Defendant Jordan Digges on the grounds that his alleged intentional acts against Plaintiff occurred in Virginia and because he was, at all relevant times hereto, a resident of the Commonwealth of Virginia.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as the events giving rise to the claims occurred in this District and because all defendants resided or conducted business in this District at the time of such events.

## FACTUAL ALLEGATIONS

**A.     Plaintiff was raped on April 27, 2021 at an off-campus student housing complex by a fellow Liberty student.**

33.     On April 27, 2021, Jordan Digges raped and sexually assaulted Plaintiff in her residence at The Oasis.

34.     At the time of Plaintiff's assault, Plaintiff was within weeks of concluding the spring semester of her junior year at Liberty University.

35.     At the time of Plaintiff's assault, Digges was a fellow Liberty student, in his sophomore year at Liberty.

36.     The rape occurred after a party in the pool and courtyard common areas of The Oasis.

37.      During the afternoon of April 27, 2021, a party took place in the pool and courtyard common areas of The Oasis.  During this party, excessive and underage drinking took place for hours unabated and unmonitored.  Plaintiff and Digges both attended this party.

38.     Digges became intoxicated at the party.

39.     Upon information and belief, numerous other attendees at the party also became intoxicated.

40.     As evening approached, Plaintiff went to her room to change her clothes.

41.     A visibly inebriated Digges followed Plaintiff to her apartment room.  He entered Plaintiff's room and locked the door behind him.

42.     Digges began kissing Plaintiff.   Digges soon became aggressive.

43.     Digges put Plaintiff's hand on his penis more than one time, and Plaintiff removed her hand telling Digges "no," or otherwise communicating that she did not consent.

44.     Digges threw the Plaintiff against the dresser and began groping her as she urged him to stop.  Digges did not stop.

45.     As it became clear to Plaintiff that she was being sexually assaulted and was in imminent danger, Plaintiff desperately tried to get away from Digges.  She attempted to climb out of her bedroom window to escape her attacker; Digges grabbed her and pulled her back into the room.

46.     During the struggle, Digges broke numerous items of furniture and decorations in the room.

47.     Digges threw Plaintiff onto the bed and ripped off her clothes.

48.     Plaintiff attempted to fight off Digges' advances, but he was considerably larger and stronger. She was unsuccessful.

49.     Despite her urges for him to stop and attempts to physically fight him off, Digges overtook Plaintiff and vaginally raped her.

50.     Digges penetrated Plaintiff's vagina with his penis without her consent.

51.     Digges penetrated Plaintiff's vagina digitally without her consent.

52.     Digges orally assaulted Plaintiff's vagina without her consent.

53.     As Plaintiff tried to scream for help, Digges covered her mouth, choked and strangled Plaintiff around her neck, and continued raping her.

54.     Plaintiff told Digges, "I can't breathe," or words to that effect.  Digges did not stop raping Plaintiff.

55.     Digges repeatedly forced Plaintiff's legs apart.

56.     Plaintiff continued to tell Digges "no" and that she "did not want it" or words to that effect.

57.     Eventually, Plaintiff was able to reach her phone. She managed to send a desperate text message to her friend, while Digges forcibly raped and assaulted her.

58.     Plaintiff texted, "Come help me.  Jordan won't stop."

59.     In response to the text message, Plaintiff's friends assisted Plaintiff in getting away from Digges and escaping the room.

60.     Plaintiff was then ran into the parking lot and hid from Digges behind a parked car.

61.     No Oasis personnel responded to Plaintiff's screams or otherwise acted to prevent or intervene in the assault.

62.     No Oasis personnel contacted Plaintiff at any time after the assault to address her continued safety on the premises, where she continued to reside.

63.     No security or other personnel of The Oasis took any measures to prohibit the excessive and underage drinking that took place for hours in the common areas of the complex.

64.     No security or other personnel of The Oasis took any measures to monitor visibly intoxicated persons such as Digges, in order to prevent foreseeable harm.

65.     Within a few hours of the rape, Plaintiff presented to Centra Lynchburg General Hospital and underwent a forensic nursing examination.

66.     While at the hospital, Plaintiff spoke with a deputy of the Campbell County Sheriff's Department and filed a police report.[6]

67.     Plaintiff was tested for sexually transmitted infections.  Photographs of the numerous bruises and lacerations on her body were taken by the nursing staff.  She was discharged in the early morning hours of April 28, 2021.

**B.     Liberty failed to investigate the rape and assault, refused reasonable accommodations for the Plaintiff, was deliberately indifferent to Plaintiff's sexual assault and injuries, retaliated against the Plaintiff, and perpetuated a hostile and dangerous environment on and around campus, culminating in Plaintiff's suspension from the university.**

68.     As of the day of Plaintiff's assault, about two weeks remained in the spring 2021 semester.

69.     The following day, Plaintiff reported the rape to the Liberty University Police Department ("LUPD"), Liberty's law enforcement agency.

70.     The LUPD officer who spoke with Plaintiff stated that he already heard about the incident and that it was likely reported by a resident administrator.

71.     The officer suggested that Plaintiff speak with Liberty's Title IX office, but that "nothing is going to be done about this" and that "the office isn't great."

72.     The officer informed Plaintiff that the LUPD would not investigate the matter as it was outside their jurisdiction.

73.     Later that day, Plaintiff received an email from Sarah Mahle, an investigator of Liberty's Title IX Office ("Office of Equity and Compliance"). Ms. Mahle stated in part: "I am

---

[6] Upon information and belief, the criminal investigation into the incident is open and pending.

reaching out to you based on some information recently reported to our office. According to

information we received, you may have been sexually assaulted by Jordan Digges, this incident

may be in violation of Liberty University's Discrimination, Harassment, and Sexual

Misconduct Policy."

74.    Plaintiff scheduled an intake appointment with the Title IX Office for May 6,

2021.

75.    On or around May 3, 2021, Plaintiff emailed her professors, including Dr. Debbie

Benoit, to request reasonable accommodations for the mental, psychological, emotional, and

physical injuries she suffered and was continuing to suffer as a result of the assault. Plaintiff

did not receive any reasonable accommodations from her professors or otherwise from Liberty.

76.    No academic accommodations were provided or offered by Liberty at any time

during the spring semester.

77.    On May 6, 2021, Plaintiff went to the Title IX Office to meet with Ms. Mahle in

person for her scheduled intake appointment. When she arrived, Plaintiff was told that Ms.

Mahle was busy and could not meet with her. The Office gave Plaintiff a pamphlet on

counseling services and group therapy and told Plaintiff they would get back to her.

78.    That same day, Plaintiff received an email from Ms. Mahle stating: "We missed

you this morning at the Office of Equity and Compliance / Title IX for your scheduled intake

appointment at 9am EST." Ms. Mahle invited Plaintiff to call the office to schedule another

appointment or let them know if she was no longer interested, and attached a word document

titled "Supportive Measures" for Plaintiff's review.

79.    Ms. Mahle's email further stated: "If we do not hear from you by Monday, May

10, 2021, we will set the matter aside at that time."

80.     It was clear to Plaintiff that Liberty, despite being aware of the rape and assault for over a week, had not taken any measures to investigate the incident.

81.     After Ms. Mahle's May 6th email, Plaintiff focused on completing the remaining week of the semester (with no academic accommodations), on her physical safety and mental health due to the recent traumatic assault, and on other personal and financial struggles.

82.     During those final weeks of the spring semester, Digges continued to contact and physically approach Plaintiff on campus.

83.     Plaintiff repeatedly told Digges to stop contacting, following, and approaching her.

84.     No efforts were taken by Liberty administration or the Title IX office to restrict Digges from contacting or approaching Plaintiff or otherwise keep him off campus.

85.     Plaintiff reported to LUPD that Digges was continuing to contact her and physically approach her.  She was informed by LUPD that they could not take any action without a civil protective order.

86.     Liberty did not take any further action or even contact Digges during the remainder of the semester concerning the Plaintiff's sexual assault and rape.

87.     Liberty did not take any action for the remainder of the semester to protect Plaintiff's safety, inform the student community of the assault or otherwise protect the student community, take remedial action or exact punishment against Digges, ensure that Digges could not contact Plaintiff, or provide accommodations or services to assist the Plaintiff in any meaningful way.

88.     Over the course of the remainder of the semester, Liberty did not investigate the sexual assault and rape of the Plaintiff, about which it became aware on April 28, 2021.

89.     On May 21, 2021, after completion of the spring semester, Plaintiff received an email from Scott Busby, an associate director of Liberty's Office of Community Life.

90.     Plaintiff was shocked to discover that Mr. Busby's email was not in regards to the rape and assault reported less than a month prior.

91.     Instead Mr. Busby emailed Plaintiff a request to speak with her about "a situation involving another student's violation of [Liberty's] substance use policy" because Plaintiff's name "was mentioned as a potential witness in a report" they received.  Mr. Busby's inquiry concerned Jordan Digges.

92.     Three days later, on May 24, 2021, Plaintiff received an email from another associate director of the Office of Community Life, Leanne Gifford.  Ms. Gifford informed Plaintiff that she was scheduled for a virtual meeting on May 26, 2021 "to discuss [her] alleged involvement with substances as a Liberty student."

93.     Ms. Gifford's outreach had nothing to do with the rape and assault reported to Liberty, but rather was the beginning of a months-long effort by Liberty to harass, intimidate, and retaliate against the Plaintiff.

94.     Unknown to Plaintiff at the time, Ms. Gifford was reaching out to question her involvement with a former Liberty University student who was merely an acquaintance of Plaintiff's.

95.     On May 25, 2021, Mr. Busby followed up on his request to speak with Plaintiff.  Mr. Busby stated: "On my side of things, you are *not* under investigation but may be able to help clarify a few details pertaining to another student's (Jordan Digges) alleged violation of our substance use policy. I understand that discussing this situation may be sensitive and difficult for you, but anything you can do to help clarify some details would be helpful."

14

96.     Mr. Busby's inquiry did not address the sexual violence Plaintiff endured and which Digges had perpetrated, but rather was focused on Digges' use of substances purportedly in violation of Liberty policy.

97.     Subsequently, Plaintiff met with both Mr. Busby and Ms. Gifford.

98.     At this meeting, Mr. Busby and Ms. Gifford asked Plaintiff about Mr. Digges' alleged substance use, including at the Oasis pool party of April 27, 2021.

99.     At the meeting, Plaintiff again complained about the rape and Liberty's subsequent inaction and asked if Mr. Busby and Ms. Gifford would discuss the rape with her.

100.    Mr. Busby and Ms. Gifford declined to do so.

101.    Instead, Mr. Busby and Ms. Gifford asked Plaintiff questions about the circumstances of the day she was raped.  However, their line of questioning focused on whether *Plaintiff* was drinking alcohol at the time or was in the presence of others (including Digges) who were consuming alcohol.

102.    On May 26, 2021, after their meeting, Ms. Gifford emailed Plaintiff that their office was still investigating allegations of that Plaintiff may have been present at social events where alcohol was consumed.  Ms. Gifford told Plaintiff that she needed to submit to a 5-panel hair test for alcohol and substance use.

103.    Ms. Gifford's focus was not on the brutal sexual assault and rape endured by the Plaintiff at the hands of a fellow student at *de facto* Liberty student housing, but instead concerned whether Plaintiff, herself, had violated "The Liberty Way" by attending parties or social events where alcohol was consumed, including the party she attended on the day she was raped.

15

104.    On or about May 27, 2021, Plaintiff was informed that she was being placed on academic probation.

105.    Plaintiff was unable to perform academically due to Liberty's complete failure to provide reasonable accommodations to Plaintiff or engage in any interactive process at all to provide her with reasonable accommodations for her immediate mental, psychological, and physical disabilities resulting from the rape and assault, including but not limited to physical trauma, post-traumatic stress disorder, and depression.

106.    On June 2, 2021, Plaintiff responded to Ms. Gifford's email and informed her that she would not submit to a hair test.  Plaintiff further stated:

> "I would like to express my frustration for the overall operation of this investigation. . . . Seeing how strict this investigation has gone for [my] alleged substance abuse, I just wish the university and organization cared more about my sexual assault by a current student here more than rumors [about alcohol use]. . . I have never felt more undermined and disrespected to know that my investigation for the assault is being overlooked and thrown under the rug.  This seems to be a reoccurring event with sexual assault incidents at this university.  At a Baptist university, justice for sexual assault victims and punishment [of] the accused should be held to a higher standard . . . than substance abuse."

107.    Plaintiff again met with Mr. Busby and Ms. Gifford on June 3, 2021 concerning her alleged involvement or association with individuals who consumed alcohol.

108.    The following day, Plaintiff received an email from Ms. Gifford.  Ms. Gifford informed Plaintiff that she would be required to take a substance use test when she returned for the fall semester.

109.    Ms. Gifford informed Plaintiff that he was being issued discipline for her "[v]iolation of Liberty's policy on Participation at a Social Gathering where alcohol is being served based on several photographs where [Plaintiff was] pictured with others who are holding alcoholic beverages in their hand."

110. Plaintiff was given a "Discipline Report" and was issued 15 "points" and 15 hours of community service to be completed by July 2, 2021. According to The Liberty Way, discussed in more detail *infra*, if a student accumulates 30 points, he or she faces "disciplinary probation," which can lead to suspension or expulsion from Liberty.

111. Throughout this process, the Office of Community Life and the administration as a whole failed to take any responsive measures with respect to the sexual assault and rape of the Plaintiff. Rather, they myopically focused on whether Plaintiff had attended parties where alcohol may have been served, including the Oasis pool party of April 27, 2021, ultimately resulting in Liberty leveling severe discipline against the Plaintiff that threatened her standing at the university.

112. At no time did the Office of Community Life or the Liberty administration take any steps to engage in an interactive process with Plaintiff to provide her with reasonable accommodations for her disabilities resulting from the assault.

113. On June 8, 2021, Plaintiff responded to Ms. Mahle's email that she continues to have "a huge issue with a guy on campus who assaulted [her]" and that she has tried talking about it with the Office of Community Life who "will not do anything about it."

114. On June 11, 2021, after continual harassment by Liberty, Plaintiff relented and took a drug test, which she paid for out-of-pocket. This test yielded a negative result. She informed Ms. Gifford about the test results, but Ms. Gifford responded—for reasons that remain unknown—that the drug test was insufficient and Plaintiff would need to pay for and take another one during the fall semester.

115.     A few weeks later, Plaintiff learned from a friend that Jordan Digges remained a student at Liberty and would be residing at the same on-campus housing as the Plaintiff during the fall 2021 semester.

116.     Alarmed and frightened, Plaintiff was forced to contact Liberty to request that her housing accommodations be changed so she would not be forced to encounter her attacker at her place of residence.

117.     The following month, Plaintiff emailed the Title IX Office to request a meeting to discuss the sexual assault, and a meeting was scheduled to take place on July 27, 2021.

118.     At the July 27th meeting, Plaintiff asked about how Liberty could assist her through the Title IX process with regards to her academics and safety, emphasizing that she did not feel safe on campus around Jordan Digges.

119.     At the meeting, Ms. Mahle did not seem to know details of the rape and assault despite the incident being reported to the Title IX office more than three months prior.

120.     Ms. Mahle offered to request a "letter of apology" from Digges as a potential remedy.

121.     During the meeting, Ms. Mahle explained the formal investigatory process culminating in a live hearing in the presence of Digges.  At that hearing, Ms. Mahle explained, Plaintiff may be cross-examined by Digges' "advisor."

122.     Plaintiff learned that without a live hearing, adjudicatory process, and a formal finding of responsibility, Liberty would not exact any punishment or sanction against Digges. Unless Plaintiff was willing to engage in this process where she would ultimately need to be face-to-face and in the same room with her attacker, and through which her credibility and character would be questioned, Liberty would not investigate the matter.

123.    At the meeting, Plaintiff requested that Liberty issue a no-contact directive towards Digges and indicated she was going to take some time to think about her additional options.

124.    Ms. Mahle informed Plaintiff that a no-contact directive would be sent to Digges. However, Plaintiff was informed that, despite the issuance of a no-contact directive, Digges "does have the right to go to all of the buildings and things that he wants to go to" and that he would be allowed "to continue doing what he needs to do."

125.    Upon information and belief, on July 27, 2021—three months after the assault—a no-contact directive was issued to Digges via email. Ms. Mahle informed Plaintiff that even if Digges walked by her, he would "not necessarily" be breaking the no-contact order.

126.    A no-contact directive was also sent to the Plaintiff on this date by Ms. Mahle. Ms. Mahle said the purpose of the no-contact directive was "to ensure the safety of each party."

127.    In early August, Plaintiff was notified that she had a hold on her account at Liberty.

128.    On August 18, 2021, Plaintiff emailed Liberty's Advising Success Services to inquire why Liberty issued a hold on her account.

129.    Plaintiff acknowledged that she was on academic probation and explained that she "didn't do well last semester because . . . I was raped by a student and I was super depressed and hurting in every aspect in life."

130.    Plaintiff also stated that she "tried asking for help and extensions last semester but no one cared" but was "trying to be strong by coming back here."

131.    Jim Blunk, Assistant Director of Advising, responded to Plaintiff's email and explained that the hold was because she had been placed on Academic Probation for the fall semester.

132.    Mr. Blunk did not respond to Plaintiff's description of the trauma she endured the prior semester and the subsequent indifference by Liberty.

133.    Following Plaintiff's return to Liberty for her fall semester, Liberty continued their indifferent, retaliatory, and discriminatory conduct, culminating in Plaintiff's suspension from the university.

134.    On September 1, 2021, soon after the start of the fall semester, Ms. Gifford emailed Plaintiff to let her know that because of Plaintiff's "involvement with [a former University student] during the Spring 2021 semester," she was required to take a substance use test the following day.

135.    On information and belief, Liberty had identified this former student as someone who had been involved with alcohol while a student at Liberty University.   Because the Plaintiff had occasionally socialized with the former student, Liberty requested that she submit to a drug test.

136.    In response, Plaintiff stated that she would not be appearing for the drug test.

137.    Plaintiff informed Ms. Gifford that "[a]s a result of the University's inaction [in responding to her sexual assault and rape] I have been grievously injured."

138.    Plaintiff continued: "Now, in an apparent effort to exacerbate and inflame the painful damage done to me, it appears the University now seeks to intimidate me by requesting an involuntary hair test regarding circumstances involving a student who no longer attends Liberty University and with whom I have had almost no interaction."

20

139.    On September 7, 2021, Plaintiff received an email from Aaron Sparkman, Director of Residential Community Standards.  In this email, Mr. Sparkman belittled Plaintiff, told her that her description of her experience with the Liberty administration was inaccurate, and told her Liberty "will grant [her] grace in this instance and not require a test at this time."

140.    Plaintiff continued the fall semester at Liberty University.

141.    At no time during the fall semester did Liberty engage in a good faith interactive process to provide Plaintiff with reasonable accommodations, services, or assistance.

142.    At no time during the fall semester, did Liberty communicate with Plaintiff in any fashion concerning the rape and sexual assault she had suffered the prior semester.

143.    Jordan Digges remained a student at Liberty throughout the fall semester.

144.    Upon information and belief, Liberty took no measures to ensure that Digges was punished or otherwise held accountable for raping Plaintiff.

145.    Upon information and belief, Liberty failed to report the rape and sexual assault in accordance with their obligations under the federal Clery Act, 20 U.S.C. § 1092, *et seq*.

146.    Upon information and belief, Liberty failed to provide any information to the Liberty student community that the incident had occurred.

147.    Upon information and belief, Liberty failed to take any measures in response to their knowledge of the rape and assault to improve safety and security in and around the Liberty campus.

148.    During the fall semester, Liberty failed to investigate the rape and sexual assault of the Plaintiff.

149. Plaintiff focused on her coursework during the semester and attempted to improve her academic standing, while dealing with the trauma from the rape and sexual assault and despite no assistance or reasonable accommodations from Liberty.

150. On December 30, 2021, Plaintiff was notified by Tom Calvert, Assistant Registrar, that she was on academic suspension and would be suspended from Liberty for the spring 2022 semester.

151. Mr. Calvert informed Plaintiff that she would "not be permitted to return to Liberty University for the spring semester."

152. Mr. Calvert informed Plaintiff that she would be required to attend another university in order to "demonstrate your ability to complete college-level work."

153. Even if she were to demonstrate this, according to Mr. Calvert, "approval to return to Liberty is not guaranteed."

154. Plaintiff's decline in academic standing that resulted in this suspension was directly caused by the trauma and disabilities she endured from her rape and sexual assault and Liberty's subsequent indifferent, retaliatory, and discriminatory conduct, as well as their complete failure to provide her with any reasonable accommodations.

155. On January 6, 2022, Plaintiff spoke with the Liberty Registrar's Office and explained that she had endured a sexual assault which had caused her academic issues at Liberty. She sought an opportunity to appeal the decision.

156. Plaintiff was invited to submit a "Beacon" complaint, which would purportedly result in a review of the decision to academically suspend her.

157. Plaintiff submitted the Beacon complaint in which she detailed the fact that she had been raped at the end of the spring 2021 semester and suffered serious injury.

22

158.    Plaintiff stated, with respect to the spring 2021 semester, "I couldn't go to school being I was scared out of my mind that I would run into [Digges] and told LUPD the next day what happened and no one did anything to help, but just said . . . 'just don't get near him . . . .'"

159.    Plaintiff continued: "I talked to counselors at Liberty and Title IX and no one still helped and all they cared about was the Liberty Way that [Digges] broke for other meaningless things rather than the actual problem of him raping me."

160.    Plaintiff stated, "Going through all this I wanted to hurt myself" and that her rape, assault, and experience with Liberty administration "pushed [my depression] very much over the edge to where I couldn't handle things on my own and felt at a loss being Liberty didn't help me at all."

161.    After explaining that she approached professors during the spring 2021 semester about the assault, but "they didn't respond and wouldn't even give me an 'I' for Incomplete" Plaintiff stated the following:

> "I pushed myself to go to school [] Fall 2021 and honestly was scary and hard at times . . . I won't be scared of my predator who has been able to run freely at Liberty University.  I will let myself have a voice and not be scared anymore."

162.    Liberty did not revisit their decision to suspend the Plaintiff.

163.    On January 10, 2022, Ms. Mahle emailed Plaintiff about a phone call "in July of 2021 regarding an Equity and Compliance/Title IX matter you had reported." Ms. Mahle stated "I am reaching out again based on some information recently reported to our office. According to the information we received, you may have been sexually assaulted."

164.    Given that Plaintiff had already discussed the incident in detail with Ms. Mahle, and repeatedly complained about the rape to other members of the administration beginning in late April 2021, she was stunned that Ms. Mahle represented that information about the rape was "recently reported" to the Title IX office.

23

165.    Plaintiff tried calling Ms. Mahle to respond to her email and left a voicemail. Ms.
Mahle did not call Plaintiff back.

166.    In an effort to continue her education, Plaintiff was forced to withdraw from
Liberty University.

167.    Plaintiff subsequently enrolled in another university, out of state, where she is
currently pursuing her college degree.

**C.    Liberty's mistreatment of Plaintiff and mishandling of her report of rape is consistent with Liberty's history, pattern, and practice of Title IX violations.**

168.    Liberty has exhibited a pattern of deliberate indifference towards reports of sexual
assault and retaliation against the students who come forward as victims.

169.    Liberty, an evangelical Christian university, requires and prioritizes sexual
abstinence by its students, as reflected in its student honor code known as "The Liberty Way."

170.    The Liberty Way includes a provision titled "Statement on Sexuality and
Relationships," which prohibits pre-marital sexual relations and is violated by "inappropriate
personal contact; visiting alone with the oppose sex at an off-campus residence; entering the
residence hallway, quad, or on-campus apartment of the opposite sex or allowing the same;
visiting any dwelling or residence with a member of the opposite sex in appropriate
circumstances."

171.    Pursuant to The Liberty Way, violations that may lead to a student's expulsions
include "sexual immorality, including inappropriate personal contact, spending the night with a
member of the opposite sex" and "[p]ossession or consumption of alcoholic beverages."

172.    Liberty has a history, pattern and practice of weaponizing The Liberty Way
against student victims of rape or sexual assault by threatening or otherwise causing the

24

students to fear that their report of the incident will subject them to discipline for violations of The Liberty Way.

173.    Liberty personnel have repeatedly discouraged, dismissed and even blamed female students who have tried to come forward with claims of sexual assault, as reflected in interviews with over 50 former Liberty students and staffers and records from over a dozen cases publicized in *ProPublica*.[7]

174.    Multiple victims brave enough to report their assault were responded to with threats of punishment for violating the Liberty Way and insistence that they acknowledge such violations. In some cases, the victims' reports of sexual assault were left ignored or led to their own punishment for student code violations.[8]

175.    Like Plaintiff, students have reported discouragement or inaction from LUPD officers relating to reports of sexual assault on and around campus.[9]

176.    Liberty's former chief of communications, Scott Lamb, recently filed a lawsuit against Liberty after coming forward with his concerns over Liberty's practices and "conspiracy of silence" with regard to sexual assaults on and around campus.

177.    Liberty is also currently facing another lawsuit filed by twelve women alleging that Liberty mishandled their sexual assault and rape investigations.

178.    In response to the national attention recently given to reports by former Liberty students and staff, multiple U.S. Senators, including Virginia Senators Tim Kaine and Mark

---

[7] Hannah Dreyfus, *"The Liberty Way"*: How Liberty University Discourages and Dismisses Students' Reports of Sexual Assaults, PROPUBLICA, Oct. 24, 2021, https://www.propublica.org/article/the-liberty-way-how-liberty-university-discourages-and-dismisses-students-reports-of-sexual-assaults.

[8] *Id.*

[9] *Id.*

Warner, have begun pushing for the U.S. Department of Education to investigate Liberty's culture of mishandling of sexual assault claims.

179.    Liberty's well-publicized culture, pattern, and practice concerning reports of sexual assault and in response to victims' protected activity under Title IX has created an environment where students are less likely to come forward with reports of sexual assault for fear of retaliation and the strict enforcement of the Liberty Way.

180.    Liberty's well-publicized culture, pattern, and practice concerning reports of sexual assault and in response to victims' protected activity under Title IX has created an environment where perpetrators of sexual violence are routinely not punished or held accountable, creating a dangerous and hostile environment on and around campus.

181.    Liberty's well-publicized culture, pattern, and practice concerning reports of sexual assault and in response to victims' protected activity under Title IX has created an environment where said reports are routinely ignored and cast aside, and where accommodations and assistance for victims is withheld or otherwise not made available. As a result, Liberty has created a dangerous and hostile environment that makes its female students more vulnerable to sexual assault and rape.

## CAUSES OF ACTION
### COUNT I
**DELIBERATE INDIFFERENCE IN VIOLATION OF TITLE IX**
**(Defendant Liberty University)**

182.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

183.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. 1981(a) states that: "No person in the United States shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . ."

184.    A federally-funded university such as Liberty University violates Title IX when it demonstrates deliberate indifference to known acts of student-on-student sexual harassment or assault.

185.    Plaintiff is a member of a protected class.

186.    At all times relevant hereto, Liberty demonstrated deliberate indifference to Plaintiff's rape and assault by fellow student Jordan Digges.

187.    At all times relevant hereto, Liberty's response, or lack thereof, to the rape and assault was clearly unreasonable in light of the known circumstances.

188.    At all times relevant hereto, Liberty's deliberate indifference was so severe, pervasive, and objectively offensive that it deprived the Plaintiff of access to the educational opportunities and benefits provided by Liberty.

189.    Plaintiff was raped and sexually assaulted by a fellow student in *de facto* student-housing during the students' spring semester at Liberty.

190.    Liberty had actual knowledge of Plaintiff's report of the rape and the identity of the dangerous student who attacked her as early as the day after the assault occurred.

191.    Plaintiff made multiple statements to the Title IX Office, the Office of Campus Life, her professors, and LUPD regarding her continued fear for her safety on campus, her struggles with mental and emotional health as a result of the assault, her need for assistance, and her need for academic accommodations.

192.    Liberty took no meaningful or reasonable action in response to their knowledge of Plaintiff's rape and assault.

193.    Under the circumstances, Liberty had a duty pursuant to Title IX to take remedial action, including but not limited to investigating the rape and assault, providing reasonable academic accommodations to the Plaintiff, providing assistance and services to the Plaintiff, ensuring that Plaintiff was not threatened and endangered while on and around campus, ensuring that Digges was not permitted to contact Plaintiff or physically approach Plaintiff, and taking measures to inform and otherwise ensure the safety of the broader student community.

194.    Liberty failed to take any such measures and therefore was deliberately indifferent to Plaintiff's rape and assault, her rights, and her safety.

195.    Liberty's deliberate indifference left Plaintiff vulnerable to further harassment and sexual violence from Digges and caused her to undergo additional harassment by Liberty personnel.

196.    As a direct and proximate result of Liberty's deliberate indifference, Plaintiff was deprived of educational benefits and opportunities.

197.    As a further direct and proximate result of Liberty's deliberate indifference, Plaintiff has suffered and will continue to suffer severe, persistent, and permanent damages, including physical, emotional, mental, and psychological pain and suffering; economic damages; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings and other economic losses.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE IX
### (Defendant Liberty University)

198.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

199.   A covered institution's retaliation against a student who has filed a complaint of sexual harassment constitutes intentional sex discrimination encompassed by a Title IX's private cause of action.

200.   At all times relevant hereto, Plaintiff engaged in protected activity under Title IX, and as a result of that protected activity, suffered adverse action by Liberty.

201.   Plaintiff engaged in protected activity in reporting the assault and rape to Liberty, in pursuing meetings and discussing the circumstances of the assault and rape with numerous Liberty personnel, and requesting that Liberty take remedial action.

202.   In response to Plaintiff's protected activity, Liberty retaliated against the Plaintiff and caused her to suffer adverse action in numerous ways, including but not limited to:

    a) Failing to and continuously refusing to investigate the rape and assault;

    b) Failing to and continuously refusing to make academic accommodations available to Plaintiff, particularly during spring 2021 semester final exams and throughout the fall 2021 semester, and instead issuing academic sanctions against Plaintiff;

    c) Using their actual knowledge of Plaintiff's reported rape to involve her in an unrelated investigation of Mr. Digges and asking Plaintiff for testimony against him for substance use, despite acknowledging the distress it would cause her;

    d) Involving Plaintiff in multiple investigations, unrelated to her rape, and using such investigations as a pretense to ask Plaintiff questions that purported to damage her Title IX claim and which would otherwise cause her distress and injury;

e)   Interrogating Plaintiff about circumstances surrounding her reported rape without taking any actions to further investigate the rape or take remedial action against it;

f)   Harassing Plaintiff throughout the summer and fall 2021 to submit to a drug test without any legitimate basis and ultimately forcing her to take a drug test at cost;

g)   Issuing monetary and disciplinary sanctions against Plaintiff for "involvement" with a non-Liberty student and other students who may have consumed alcohol, including Digges, while leaving Digges uninvestigated and unpunished for a far more serious offense;

h)   Suspending Plaintiff from Liberty;

i)   Failing to revisit or reconsider their decision to suspend Plaintiff from Liberty in light of the student-on-student sexual violence she had endured; and

j)   Otherwise failing to comply with their responsibilities mandated by Title IX.

203.   In the months that followed Liberty's actual knowledge of Plaintiff's report of being raped, they treated Plaintiff as a suspect of investigations and aggressively pursued sanctions against her, rather than treating Plaintiff as a victim of a traumatic attack and protecting her safety and access to their educational benefits.

204.   Liberty's retaliatory conduct would dissuade a reasonable person from making or supporting a charge of sexual harassment.

205.   Liberty's retaliation toward the Plaintiff directly and proximately caused Plaintiff to suffer academically, barred her access to educational opportunities and benefits, and caused discrimination on the basis of sex.

206.    As a further direct and proximate result of the Liberty's retaliation, Plaintiff has suffered and will continue to suffer severe, persistent, and permanent damages, including physical, emotional, mental, and psychological pain and suffering; economic damages; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings and other economic losses.

## COUNT III

## SEX-BASED HARRASSMENT AND CREATION OF A HOSTILE ENVIRONMENT IN VIOLATION OF TITLE IX

### (Defendant Liberty University)

207.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

208.    Plaintiff is a member of a protected class.

209.    Plaintiff was raped by a fellow Liberty student in off-campus *de facto* student housing, which created a hostile and abusive environment.

210.    Liberty's response, and lack thereof, to Plaintiff's rape caused her to undergo further sexual harassment and was so severe and pervasive so as to create a sexually hostile educational environment in violation of Title IX.

211.    The sexual harassment Plaintiff suffered due to the rape and assault by Digges was compounded by Liberty's sex-based harassment of her, exhibited in numerous ways, including but not limited to:

    a)  Leaving Plaintiff (and other female students) completely unprotected from another assault by Digges despite their knowledge of his history of and tendency towards sexual violence;

31

b)  Making Plaintiff vulnerable to additional harassment from Digges by permitting his continued contact and harassment of her;

c)  Interrogating Plaintiff as to her credibility and sobriety on the day she was raped;

d)  Failing to take any steps to meaningfully investigate the rape and sexual assault;

e)  Failing to take any steps to punish Digges for the sexual violence he perpetrated against Plaintiff;

f)  Opening and pursuing an investigation of the Plaintiff, demanding she take expensive drug tests at her own cost, and punishing Plaintiff for an alleged minor offense (despite Plaintiff's denials and a total lack of evidence), during which time period they took no action to investigate or remedy the sex-based attack she suffered;

g)  Repeatedly prioritizing the investigation and punishment of students, including Plaintiff, for minor offenses over any investigation or remedial action in response to reported sexual violence;

h)  Engaging in practices, acts, and omissions that left Plaintiff and other students vulnerable to sexual violence and sex-based harassment; and

i)  Otherwise failing to comply with their responsibilities mandated by Title IX.

212.   Liberty University is responsible for the above actions which subjected Plaintiff to a hostile environment, as well as their other actions evidencing their deliberate indifference and retaliatory conduct in response to Plaintiff's report of the rape.

213.    As a direct and proximate result of Liberty's acts and omissions, Plaintiff suffered severe and pervasive harassment which subjected her to a hostile educational environment.

214.    As a further direct and proximate result of Liberty's acts and omissions, Plaintiff was made to feel unsafe on campus and in her own home, suffered academically, was made vulnerable to additional harassment, was forced to leave Liberty, and was deprived of access to educational opportunities and benefits.

215.    As a further direct and proximate result of Liberty's sex-based harassment, Plaintiff has suffered and will continue to suffer severe, persistent, and permanent damages, including physical, emotional, mental, and psychological pain and suffering; economic damages; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings and other economic losses.

## COUNT IV

## DISCRIMINATION IN VIOLATION OF § 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794

### (Defendant Liberty University)

216.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

217.    29 U.S.C. § 794(a) provides as follows:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

218.    Following Plaintiff's report of the rape, Liberty had knowledge of the mental, psychological, and physical disabilities she was enduring as a result, including but not limited to physical trauma, post-traumatic stress disorder, and depression.

219.     Despite Liberty's knowledge of Plaintiff's disabilities and of her pleas for academic accommodations that she was in need of, Liberty refused to provide any reasonable accommodations even in the weeks directly following the sexual assault.

220.     Liberty failed to engage in an interactive process with Plaintiff to determine whether reasonable accommodations could be provided to her.

221.     Plaintiff's disabilities and their resulting symptoms were further exacerbated by Liberty's acts and omissions amounting to deliberate indifference to Plaintiff's rape, including but not limited to Liberty's refusal to take any action against Digges, failure to conduct an appropriate and timely investigation of Digges or the reported rape, and refusal to provide reasonable academic accommodations Plaintiff was in need of.

222.     Liberty discriminated against Plaintiff based on her disabilities when they refused to provide her with academic accommodations and failed to participate in any interactive accommodation process with Plaintiff in good faith.

223.     Liberty's discrimination against Plaintiff in violation of the Rehabilitation Act ultimately contributed to Plaintiff being left with no choice but to withdraw from Liberty.

224.     As a direct and proximate result of Liberty's acts and conduct, Plaintiff was caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, personal embarrassment and humiliation, anxiety, loss of access to Liberty's educational benefits, and economic losses.

## COUNT V

### RETALIATION IN VIOLATION OF § 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794

### (Defendant Liberty University)

225.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

226.    Plaintiff's protected activity under the Rehabilitation Act, including her pursuit for accommodations needed for her disabilities, was responded to by Liberty with unlawful retaliation.

227.    Liberty not only refused Plaintiff's requests for academic accommodation, but then also took adverse action and further exacerbated Plaintiff's mental and psychological anguish by placing her on academic probation due to her grades during the semester when the needed accommodations were refused.

228.    Liberty retaliated against Plaintiff by placing her on academic probation rather than provide academic accommodations for her disabilities, which adversely impacted her academic record, educational opportunities, and standing at Liberty.

229.    Liberty failed to engage in a good faith interactive process to determine whether reasonable accommodations could be given to Plaintiff for her disabilities.

230.    Liberty responded to Plaintiff's disabilities and need for accommodations with unreasonable indifference, hostility, and a total disregard for the harm to Plaintiff from such conduct.

231.    Liberty's retaliation against Plaintiff in violation of the Rehabilitation Act ultimately contributed to Plaintiff being left with no choice but to withdraw from Liberty.

232.    As a direct and proximate result of Liberty's acts and conduct, Plaintiff was caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, personal embarrassment and humiliation, anxiety, loss of access to Liberty's educational benefits, and economic losses.

## COUNT VI

### NEGLIGENCE

### (Defendant Liberty University)

233.   The foregoing paragraphs are incorporated by reference as if fully set forth herein.

234.   At all times relevant hereto, Liberty had a duty to use reasonable care to ensure that Plaintiff, a Liberty student residing in *de facto* student housing, was placed and resided in a safe environment.

235.   At all times relevant hereto, Liberty had a duty to use reasonable care in investigating Plaintiff's report of sexual violence committed by a fellow student.

236.   At all times relevant hereto, Liberty had a duty to use reasonable care in handling a student's Title IX complaint.

237.   At all times relevant hereto, Liberty had a duty to use reasonable care to ensure Plaintiff was in a safe environment after her assault.

238.   At all times relevant hereto, Liberty had a duty to use reasonable care in training and supervising employees to comply with Title IX and otherwise properly and adequately respond to a student's report of sexual violence.

239.   Liberty breached its duties of reasonable care to Plaintiff by its acts and omissions, including but not limited to:

    a)   Offering and advertising The Oasis as living accommodations to students, including Plaintiff, despite such premises' failure to provide appropriate security;

    b)   Failing to ensure that The Oasis—a complex where Liberty referred students including the Plaintiff and actively advertised to current and prospective students—had adequate security on premises;

36

c) Failing to promptly investigate Plaintiff's report of sexual violence;

d) Failing to investigate Plaintiff's report of sexual violence and/or the ongoing danger Digges posed to her and other students;

e) Responding to Plaintiff's Title IX complaint in a manner clearly unreasonable in light of known circumstances;

f) Failing to promptly issue a no-contact directive against Mr. Digges, leaving Plaintiff vulnerable to continued contact, harassment, and stalking by Digges;

g) Failing to ensure that Digges was not assigned to the same housing complex as Plaintiff following Plaintiff's report that she was raped by him;

h) Failing to ensure that Digges was not assigned to the same student housing complex as Plaintiff following Plaintiff's reports to Liberty that Digges was harassing and stalking her;

i) Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

j) Failing to take measures to ensure that Plaintiff's academic standing would not be adversely affected by the rape and sexual assault and otherwise failing to provide or offer academic or other reasonable accommodations;

k) Responding to Plaintiff's sexual assault in a manner that was deliberately indifferent;

l) Failing to properly train and supervise employees, including but not limited to Mr. Busby, Ms. Gifford, and Ms. Mahle, in how to comply with Title IX's

directives and otherwise in how to properly and adequately respond to reports

of sexual assault; and

m) Failing to properly train and supervise employees, including but not limited to

Mr. Busby, Ms. Gifford, and Ms. Mahle, in how to treat and communicate

with victims of sexual violence so as to not perpetuate or cause additional sex-

based harassment.

240.     As a direct and proximate cause of Liberty's negligence, Plaintiff was made

vulnerable to sex-based discrimination, harassment and violence, and did in fact endure

discrimination, harassment and violence and suffer exacerbated mental, emotional, and

psychological harm as a result.

241.     As a further direct and proximate result of Liberty's negligence, Plaintiff has

suffered and will continue to suffer severe, persistent, and permanent damages, including

physical, emotional, mental, and psychological pain and suffering; economic damages;

personal embarrassment and humiliation; loss of employment opportunities; loss of educational

opportunities; and economic losses including but not limited to loss of past and future earnings

and other economic losses.

## COUNT VII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Defendant Liberty University)

242.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

243.     Defendant Liberty University engaged in outrageous conduct towards Plaintiff,

including but not limited to all of the acts and omissions underlying Liberty's deliberate

indifference to Plaintiff's rape and injuries, which caused Plaintiff to suffer severe emotional distress.

244.    Liberty knew of Plaintiff's rape and the resulting mental, psychological, and physical disabilities she was suffering, and yet engaged in outrageous conduct, including but not limited to failing to take any action to reasonably protect Plaintiff from Digges; refusing to provide any accommodations Plaintiff needed to access educational opportunities and benefits; taking retaliatory action against her over the several months following her rape; and creating a hostile and dangerous environment that Plaintiff was forced to endure as a Liberty student.

245.    Through Liberty's conduct, Liberty acted with a discriminatory intent to cause, or with a reckless disregard for the probability to cause, Plaintiff to suffer mental, and psychological pain and suffering; terror and fear; personal embarrassment and humiliation; and severe emotional distress.

246.    Liberty's outrageous and malicious conduct resulted in severe emotional distress to Plaintiff.

247.    Liberty's conduct further exacerbated Plaintiff's mental and psychological harm already inflicted to her by Digges and thereby contributed to her current post-traumatic stress symptoms, fear, terror, depression, and malaise.

248.    As a direct and proximate cause of Liberty's actions against Plaintiff, Plaintiff suffered severe, persistent, and permanent damages, including physical, emotional, mental, and psychological pain and suffering; terror and fear; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings and other economic losses.

## COUNT VIII

### NEGLIGENCE

### (Defendants Oasis2000, Blue2000, and Langley Properties)

249.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

250.     At all times relevant hereto, Oasis2000, Blue2000, and Langley Properties, and each of them, owned, operated, and/or managed The Oasis.

251.     At all times relevant hereto, the Plaintiff was a resident of the Oasis.

252.     Oasis2000, Blue2000, and Langley Properties, and each of them, had a special relationship with the Plaintiff as her landlord, requiring them to take reasonable acts to ensure Plaintiff's safety from known or reasonably foreseeable harm by third parties.

253.     Oasis2000, Blue2000, and Langley Properties, and each of them, owed a duty of reasonable care to residents such as the Plaintiff in managing and securing The Oasis to be a safe environment for the students living there, including Plaintiff.

254.     Oasis2000, Blue2000, and Langley Properties, and each of them, owed a duty to residents such as the Plaintiff to deploy security to ensure invitees and residents of The Oasis were not at unreasonable risk of harm.

255.     Oasis2000, Blue2000, and Langley Properties, and each of them, owed a duty to residents such as the Plaintiff, to take reasonable measures to ensure that underage and excessive alcohol consumption did not take place on their property.

256.     Oasis2000, Blue2000, and Langley Properties, and each of them, owed a duty to residents such as the Plaintiff to take reasonable measures to prevent foreseeable harm by intoxicated residents, guests, invitees, and persons on The Oasis premises.

257.    Oasis2000, Blue2000, and Langley Properties, and each of them, owed a duty to residents such as the Plaintiff to take reasonable measures to prevent foreseeable sexual and physical violence on The Oasis premises.

258.    Oasis2000, Blue2000, and Langley Properties, and each of them, owed a duty to residents such as the Plaintiff to take reasonable measures to prevent foreseeable stalking and unwanted contact from a perpetrator such as Digges on The Oasis premises.

259.    At all times relevant hereto, Oasis2000, Blue2000, and Langley Properties, and each of them, breached their duty of care by failing to provide reasonable and responsive security on the premises of The Oasis.

260.    At all times relevant hereto, Oasis2000, Blue2000, and Langley Properties, and each of them, breached their duty of care by failing to take any action to notify The Oasis' invitees and residents of the reported rape that occurred on the premises, of the resulting criminal investigation, or that Digges posed an ongoing, imminent threat of physical and sexual violence.

261.    At all times relevant hereto, Oasis2000, Blue2000, and Langley Properties, and each of them, breached their duty of care by failing to take any actions to prevent or limit Digges' opportunity to harm or attack Plaintiff despite such harm being foreseeable.

262.    At all times relevant hereto, Oasis2000, Blue2000, and Langley Properties, and each of them, breached their duty of care owed to Plaintiff to warn and protect the Plaintiff from foreseeable harm.

263.    At all times relevant hereto, Oasis2000, Blue2000, and Langley Properties, and each of them, breached their duty of care by allowing excessive and underage drinking to take

place in the common areas of the Oasis unabated and unmonitored, which created a risk of foreseeable harm to residents including the Plaintiff.

264.    At all times relevant hereto, Oasis2000, Blue2000, and Langley Properties, and each of them, breached their duty of care by failing to take any actions to prevent or limit Digges' stalking and harassment of Plaintiff on The Oasis premises despite such harm being foreseeable.

265.    As a direct and proximate cause of Defendants' negligence, Plaintiff was raped and assaulted at The Oasis and was left without any assistance or means of escape from Digges attack until her screams were heard and responded to by her friends.

266.    As a direct and proximate cause of Defendant's negligence, Plaintiff was made vulnerable to Digges' continued harassment and did in fact endure his stalking of her and suffer exacerbated mental, emotional, and psychological harm as a result.

267.    As a further direct and proximate result of Defendants' negligence, Plaintiff suffered severe, persistent, and permanent damages, including physical, emotional, mental, and psychological pain and suffering; terror and fear; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings and other economic losses.

## COUNT IX

## FALSE IMPRISONMENT

### (Defendant Jordan Digges)

268.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

269.     Defendant Jordan Digges unlawfully restricted Plaintiff's liberty when he locked her in her bedroom and otherwise physically prevented her from leaving before and while he proceeded to rape and sexually assault her.

270.     Plaintiff desperately tried to get away from Digges, screaming for help and even attempting to climb out a window, but Digges used his larger size and strength to stop her from doing so.

271.     There was no legal excuse to justify Digges' restraint of Plaintiff's liberty.

272.     As a direct and proximate result of Digges' false imprisonment of Plaintiff, Plaintiff suffered severe, persistent, and permanent damages, including physical, emotional, mental, and psychological pain and suffering; terror and fear; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings and other economic losses.

## COUNT X
## ASSAULT
### (Defendant Jordan Digges)

273.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

274.     Defendant Jordan Digges raped and sexually and physically assaulted Plaintiff on April 27, 2021 on the premises of the Oasis.

275.     In doing so, Digges engaged in an overt act intended to place Plaintiff in fear or apprehension of bodily harm and created reasonable fear or apprehension in the Plaintiff.

276.     Plaintiff's fear of bodily harm from Digges was not only reasonable after he followed her in The Oasis and began his unwanted advances, but was also tragically verified as he proceeded to sexually batter and rape her.

277.     As a direct and proximate result of Digges' assault of Plaintiff,  Plaintiff suffered severe, persistent, and permanent damages, including physical, emotional, mental, and psychological pain and suffering; terror and fear; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings and other economic losses.

## COUNT XI

### BATTERY

**(Defendant Jordan Digges)**

278.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

279.     Defendant Jordan Digges raped and sexually and physically assaulted and battered Plaintiff on April 27, 2021 on the premises of the Oasis as more fully described above.

280.     In doing so, Digges engaged in an unwanted touching of the Plaintiff which was neither consented to, excused, nor justified.

281.     Plaintiff did not consent to sexual intercourse with Jordan Digges. As a direct and proximate result of  Digges' battery of Plaintiff,  Plaintiff suffered severe, persistent, and permanent damages, including physical, emotional, mental, and psychological pain and suffering; terror and fear; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings and other economic losses.

## COUNT XII

### STALKING

**(Defendant Jordan Digges)**

282.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

283.     Pursuant to Va. Code § 8.01-42.3(A), "[a] victim has a civil cause of action against an individual who engaged in conduct that is prohibited under § 18.2-60.3," the criminal statute for stalking, which is violated by one "who on more than one occasion engages in conduct directed at another person with the intent to place, or when he knows or reasonably should know that the conduct places that other person in reasonable fear of death, criminal sexual assault, or bodily injury to that other person." Va. Code § 18.2-60.3(A).

284.     Furthermore,

> [i]f the person contacts or follows or attempts to contact or follow the person at whom the conduct is directed after being given actual notice that the person does not want to be contacted or followed, such actions shall be prima facie evidence that the person intended to place that other person, or reasonably should have known that the other person was placed, in reasonable fear of death, criminal sexual assault, or bodily injury to [her]self.

Va. Code § 18.2-60.3(A).

285.     Defendant Jordan Digges continued to contact and physically approach Plaintiff after April 27, 2021, the date he raped and sexually assaulted her.

286.     Digges knew or reasonably should have known that this conduct following his violent attack against Plaintiff reasonably place her in fear of repeated criminal sexual assault or bodily injury against her.

287.     Digges continued this contact despite Plaintiff repeatedly telling him to stop contacting, following, and approaching her.

288.     Digges' stalking and civil harassment of Plaintiff exacerbated the emotional, mental, and psychological harm she was already suffering due to his sexual assault and battery of her.

289.     As a direct and proximate result of Digges' stalking of Plaintiff, Plaintiff suffered severe, persistent, and permanent damages, including emotional, mental, and psychological

pain and suffering; terror and fear; personal embarrassment and humiliation; loss of employment opportunities; loss of educational opportunities; and loss of past and future earnings and other economic losses.

## COUNT XIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Defendant Jordan Digges)

290.   The foregoing paragraphs are incorporated by reference as if fully set forth herein.

291.   Defendant Jordan Digges engaged in outrageous conduct towards Plaintiff, including but not limited to his rape, sexual assault, and subsequent stalking of Plaintiff, which caused Plaintiff to suffer severe emotional distress.

292.   Through Digges' outrageous conduct, he acted with an intent to cause, or with a reckless disregard for the probability to cause, Plaintiff to suffer physical, mental, and psychological pain and suffering; terror and fear; personal embarrassment and humiliation; and severe emotional distress.

293.   Digges' rape and sexual assault of Plaintiff not only caused her to suffer physical trauma and injuries, but also enduring severe emotional distress which has contributed to her past, current and ongoing post-traumatic stress symptoms, fear, terror, and depression.

294.   Digges' outrageous and malicious conduct resulted in severe emotional distress to Plaintiff.

295.   As a direct and proximate cause of Digges' actions against Plaintiff, Plaintiff suffered severe, persistent, and permanent damages, including physical, emotional, mental, and psychological pain and suffering; terror and fear; personal embarrassment and humiliation; loss

of employment opportunities; loss of educational opportunities; and loss of past and future earnings and other economic losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Does respectfully seeks a judgment in her favor and against Defendants Liberty University, Inc., Jordan Digges, Oasis2000, LLC, Blue2000, LLC, Sage Communities, LLC d/b/a Langley Properties, and LP Apartments, LLC d/b/a Langley Properties, jointly and severally, as follows:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages;

C. Issue a permanent injunction that (i) prohibits Defendant Liberty, its officers, agents, employees, and successors from engaging in the discriminatory, harassing, and retaliatory practices complained of herein; and (ii) imposes a prohibition of similar conduct in the future by:

   a. Requiring a three-year monitoring of all Title IX complaints made to Defendant Liberty to prevent any further discrimination, harassment, and/or retaliation, including the appointment, hiring and training of new and current officers;

   b. Ordering Defendant Liberty University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs including the implementation of appropriate training programs for its officers, agents, and employees;

   c. Ordering Defendant Liberty to fully investigate conduct that may constitute sex-based harassment;

    d.  Ordering Defendant Liberty to mitigate the effects of harassment and/or sexual assault including by eliminating any hostile environment that may arise from or contribute to it;

    e.  Appointing an independent monitor to ensure fairness and compliance with the orders of this Court; and

    f.  Ordering Liberty to terminate Digges' enrollment at the University.

D.  A declaratory judgment that Liberty University's policies, practices, and/or procedures challenged herein are unlawful and in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*;

E.  Costs and expenses;

F.  Reasonable attorney's fees;

G.  Pre-judgement and post judgment interest; and

H.  Such other relief as this Honorable Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial as to all claims so triable.

Respectfully submitted,

MICHIEHAMLETT PLLC

/s/ *Rhonda Quagliana*
Rhonda Quagliana, Esquire
VSB #39522
310 4th Street NE, 2nd Floor
P.O. Box 298
Charlottesville, Virginia 22902
(434) 951-7225
(434) 951-7279 *facsimile*
rquagliana@michiehamlett.com

JOSEPH, GREENWALD & LAAKE, P.A.

Erika Jacobsen White, Esq., *pro hac vice*
anticipated
Drew LaFramboise, Esq., *pro hac vice*
anticipated
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
(301) 222-2200
(301) 220-1214 (fax)
ewhite@jgllaw.com
dlaframboise@jgllaw.com

*Counsel for Plaintiff Jane Doe*