IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JANE DOE,<br><br>    **Plaintiff,**<br><br>v.<br><br>LIBERTY UNIVERSITY, INC., et al.,<br><br>    **Defendants.** | Case No. 6:22-cv-00021 |

**THE OASIS DEFENDANTS' BRIEF IN SUPPORT OF**
**THEIR RULE 12(b)(6) MOTION TO DISMISS**

Oasis2000, LLC; Blue2000, LLC; Sage Communities, LLC; and LP Apartments, LLC state as follows in support of their previously filed Fed. R. Civ. P. 12(b)(6) motion to dismiss (Dkt. 55) Plaintiff's Amended Complaint (Dkt. 52).

**Statement of the Case**

Plaintiff alleges that she was raped by her Liberty University classmate, Defendant Jordan Digges. Plaintiff alleges that the assault occurred in her room in her off-campus apartment at the Oasis. She asserts that Oasis2000, LLC; Blue2000, LLC; Sage Communities, LLC; and LP Apartments, LLC (collectively, the "Oasis" or "Oasis entities") were her "*de facto* dormitory landlord." According to Plaintiff, the Oasis entities owed a duty to protect her from Mr. Digges.

But because none of the Oasis entities owed Plaintiff a duty on the facts alleged, they should be dismissed with prejudice.



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

1

**Statement of Alleged Facts**[1]

In April 2021, Plaintiff was a Liberty University student. Am. Compl. (Dkt. 52). At that time, she leased an apartment at the Oasis, a "'students only' off-campus housing complex." Am. Compl. ¶¶ 16 & 34. Plaintiff claims that the Oasis "operates as a *de facto* Liberty student dormitory and is comprised entirely of students." Am. Compl. ¶ 15. She alleges that the Oasis entities were her "*de facto* dormitory landlord" and that they had a "special relationship" with her. Am. Compl. ¶ 306.

On April 27, 2021, Plaintiff and Defendant Digges attended a party in the common areas of the Oasis. Am. Compl. ¶ 80. "[T]he attendees were openly drinking" from kegs. Am. Compl. ¶ 81. "Digges became intoxicated at the party." Am. Compl. ¶ 82. According to Plaintiff, her lease prohibited open alcoholic containers outside of apartments, underage drinking, kegs, and illegal activities. Am. Compl. ¶¶ 50–52.

After the party, "a visibly inebriated Digges followed Plaintiff to her apartment room. He entered Plaintiff's room and locked the door behind him." Am. Compl. ¶ 85. "Digges began kissing Plaintiff." Am. Compl. ¶ 86. Plaintiff does not allege that any of this was unwanted. And Plaintiff does not allege how long after the party this allegedly occurred.

But "Digges soon became aggressive." Am. Compl. ¶ 86. He "put Plaintiff's hand on his penis." Am. Compl. ¶ 87. At this point, Plaintiff said "'no' or otherwise communicat[ed] that she did not consent." Am. Compl. ¶ 87.

---

[1] The Oasis entities do not admit the truth of Plaintiff's allegations. Rather, the Oasis entities recognize that for the purpose of this motion, the Court must accept them as true.

"Digges threw Plaintiff against the dresser" and began sexually assaulting her. Am. Compl. ¶ 88. Plaintiff struggled and urged Digges to stop, but Digges overpowered and raped her. Am. Compl. ¶¶ 88–96.

After the assault began, and "[a]s Plaintiff tried to scream for help, Digges covered her mouth, choked and strangled Plaintiff around her neck, and continued raping her." Am. Compl. ¶ 97. "Plaintiff continued to scream for help when her screams weren't muffled by Digges' hands on her mouth or around her throat." Am. Compl. ¶ 97. Plaintiff does not allege that anyone heard (or even should have heard) her screams.

Plaintiff was able to text her friends for help while she was being raped. Am. Compl. ¶ 101. She "texted, 'Come help me. Jordan won't stop.'" Am. Compl. ¶ 102. "In response to the text message," Plaintiff's friends came to help. Am. Compl. ¶ 103.

The Oasis did not prevent or intervene in the assault. Am. Compl. ¶ 105. Plaintiff does not allege that the Oasis knew or should have known about the assault.

Defendant Digges was Plaintiff's Liberty University classmate. Am. Compl. ¶ 3. "During the final weeks of the spring semester, Digges continued to contact and physically approach Plaintiff on campus." Am. Compl. ¶ 131. "Upon information and belief, Digges returned to The Oasis about a week and a half after the assault." Am. Compl. ¶ 132. Plaintiff does not allege that after the assault, Digges was able to enter the Oasis or that he had any contact with Plaintiff at the Oasis.

At some unspecified time, Plaintiff told an unspecified Oasis employee about the assault. Am. Compl. ¶ 113. Plaintiff does not allege that she told anyone at the Oasis that she was concerned for her safety or that she asked that Digges be barred from the complex.


FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

3

1982.1133\ASG
4891-5638-0454 .v1

In Count VI, Plaintiff alleges that the Oasis negligently failed to prevent the alleged assault. Am. Compl. ¶ 323. She also alleges that the Oasis negligently failed to prevent Digges from approaching and contacting her after the assault. Am. Compl. ¶ 324.

Plaintiff makes the conclusory allegation that the Oasis "assumed a duty to provide reasonably safe and secure premises specifically for university students." Am. Compl. ¶ 45. Plaintiff does not allege that the Oasis made any express promise to protect Plaintiff from Digges.

Plaintiff also vaguely alleges that the Oasis knew of a February 2021 physical assault. Am. Compl. ¶¶ 69–70. And she claims that another female was raped at the Oasis. Am. Compl. ¶ 72. But she does not state whether that rape was before or after Plaintiff's rape. And she does not allege that anyone told the Oasis about that other alleged rape.

### **Legal Standard**

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint's factual allegations must produce an inference of liability strong enough to push the plaintiff's claims "'across the line from conceivable to plausible.'" *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570).

Thus, pleadings that offer mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 678. Indeed, "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments" need not be accepted as true. *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012). Ultimately, reviewing a complaint is "a context-specific task" requiring the Court to



1982.1133\ASG
4891-5638-0454 .v1

"draw on its judicial experience and common sense" in order to determine whether the "complaint states a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

### **Argument and Authorities**

Generally, a party has no duty to protect another from a third party's criminal acts. There are two rare exceptions to this rule.

The first rare exception is when there is a special relationship between the alleged protector and protectee or the protector and third party. The second rare exception requires an express promise by the protector to protect the specific protectee from the specific threat alleged.

Because Plaintiff has not pleaded sufficient facts to invoke either rare exception, Plaintiff has not stated a claim against the Oasis for failing to prevent her sexual assault or Digges's alleged stalking.

**1. The Oasis had no duty to protect Plaintiff from Digges's alleged assault.**

    **A. Generally, a party owes no duty to warn or protect a plaintiff from the criminal acts of third parties.**

Plaintiff's negligence claim against the Oasis entities is governed by Virginia law. *Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*, 892 F.3d 624, 646 (4th Cir. 2018).

"With respect to claims of negligence, the factual allegations must establish the existence of a duty of care. Whether such duty exists is a pure question of law." *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 106, 540 S.E.2d 134, 139 (2001) (quotations omitted).

"As a general rule, a person does not have a duty to warn or protect another from the criminal acts of a third person." *Commonwealth v. Peterson*, 286 Va. 349, 356, 749 S.E.2d 307, 311 (2013). "This is particularly so when the third person commits acts of



1982.1133\ASG
4891-5638-0454 .v1

assaultive criminal behavior because such acts cannot reasonably be foreseen." *Id.* (quotations omitted).

There are two rare exceptions to this general rule. *A.H. v. Church of God in Christ*, 297 Va. 604, 619, 831 S.E.2d 460, 468 (2019). For the first exception to apply, "the facts must establish the existence of a special relationship." *Peterson*, 286 Va. at 356, 749 S.E.2d at 311. The requisite special relationship must be between the plaintiff and defendant or the third party and the defendant. *Id.*

When a special relationship does exist, the circumstances required to trigger a duty vary depending on the nature of the special relationship. *A.H.*, 297 Va. at 620, 831 S.E.2d at 469 ("The degree of foreseeability required depends on the nature of the special relationship because we have recognized two levels of foreseeable harm."). Some special relationships—such as a business-invitee relationship—apply an "imminent probability of harm" standard. *Id.* But others—such as an innkeeper-guest relationship—apply a heightened "known or reasonably foreseeable harm" standard. *Id.* at 621, 831 S.E.2d at 469. In no case does a special relationship make the defendant an insurer of the plaintiff's safety. *Id*. at 621, 831 S.E.2d at 470.

In the landlord-tenant context, the Supreme Court of Virginia has *never* held that a special relationship existed between a landlord and its tenant. *A.H.*, 297 Va. at 620 n.8, 831 S.E.2d at 469 n.8. Indeed, the Supreme Court of Virginia has "consistently rejected the contention that the relationship of landlord and tenant, without more, constitutes a special relationship such that a duty of care may arise with regard to the conduct of a third party." *Yuzefovsky*, 261 Va. at 108, 540 S.E.2d at 140 (citing *Klingbeil Mgmt. Grp. v.*



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

6

*Vito*, 233 Va. 445, 448, 357 S.E.2d 200, 201 (1987); *Gulf Reston v. Rogers*, 215 Va. 155, 159, 207 S.E.2d 841, 845 (1974)).

If, however, the circumstances were such that a special relationship did exist between a landlord and tenant, the landlord's duty would be limited. *Yuzefovsky*, 261 Va. at 109, 540 S.E.2d at 141. The imminent-probability-of-harm standard would apply. *Id.* Assuming there was a special relationship, no duty to act for the benefit of the tenant would exist unless the landlord "knows that criminal assaults against persons are occurring or are about to occur on the premises, based upon notice of a specific danger just prior to the assault." *Peterson*, 286 Va. at 357, 749 S.E.2d at 311 (quotations omitted).

The Supreme Court has rarely found that the facts were sufficient to meet this imminent-probability-of-harm standard. *Id.* at 358, 749 S.E.2d at 312. A plaintiff must show that she "was in imminent danger of harm from a criminal assault by a third party of which the defendants were aware." *Yuzefovsky*, 261 Va. at 110, 540 S.E.2d at 141. This requires "notice of a specific danger just prior to the assault." *Peterson*, 286 Va. at 357, 749 S.E.2d at 311.

Applying this standard, *Burns v. Johnson* reversed a jury verdict for the plaintiff and entered judgment for the defendant.[2] 250 Va. 41, 45, 458 S.E.2d 448, 451 (1995). In *Burns*, a drunk gas-station customer approached the attendant booth on the premises and told the employee in the booth that he wanted to come inside and have sex[3] with her. *Id.* at 42–

---

[2] A party "with a jury verdict approved by the trial court occupies the most favored position known to the law." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 147, 439 S.E.2d 387, 390 (1994).
[3] The customer used a far-more vile four-letter euphemism for sexual intercourse that need not be repeated here.

7

43, 458 S.E.2d at 449. It was about 2 a.m. And the employee told him to leave. *Id.* at 43, 458 S.E.2d at 449.

Despite the employee's instructions to leave, the drunk customer was still on the premises when the plaintiff—a young woman—came to get gas. *Id.* Although the drunk customer remained on site, the employee left the booth's front window to work in the back after the plaintiff prepaid for her gas. *Id.* As the plaintiff was pumping gas, the drunk customer approached plaintiff and grabbed her arm. He said that he would shoot her if she screamed. He then forced her into a nearby field and raped her. *Id.*

The employee returned to the front of the booth and saw the assailant's and the plaintiff's cars abandoned. *Id.* at 43, 458 S.E.2d at 450. Although both the plaintiff and her assailant were gone, the employee "had no reason to feel the plaintiff was in any danger." *Id.* (quotations omitted).

A few minutes after the employee returned to the window, the plaintiff's friend drove by and saw her car. *Id.* The friend stopped and asked the employee if she had seen the plaintiff. *Id.* at 43–44, 458 S.E.2d at 450. The employee said that she had seen her standing with the assailant a few minutes before. The employee told the friend that he had "better look around for [the plaintiff], because something is wrong." *Id.* at 44, 458 S.E.2d at 450.

The friend searched the premises but did not find the plaintiff. *Id.* He asked the employee to call the police. *Id.* The employee acknowledged the request and gave the friend "an okay." *Id.* The friend then left, but the employee never called the police. *Id.*

The assailant raped the plaintiff for one-and-a-half hours. *Id.*


FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

Applying the imminent-probability-of-harm standard, the Court noted that a duty only arises when there is "notice of a specific danger just prior to the assault." *Id.* The Court also noted that the evidence "utterly fail[ed] to establish that defendant's employee knew a criminal assault was about to occur on the premises which indicated an imminent probability of harm to the plaintiff." *Id.* at 44–45, 458 S.E.2d at 451. Accordingly, the defendant owed the plaintiff no duty. *Id.* at 45, 458 S.E.2d at 451.

Importantly, *Burns* specifically rejected that the employee's "something is wrong" comment mattered at all. *Id.* At that point, the plaintiff had already been abducted and was being attacked. *Id.* "[B]ecause [that] statement was made after the abduction already had occurred, it fail[ed] as a matter of law to support a conclusion that, before the plaintiff was forced from defendant's premises, the employee knew of a specific danger to the plaintiff." *Id*.

Thus, to survive a motion to dismiss, Plaintiff must allege facts to establish that (1) the Oasis had a special relationship with her, and (2) that the Oasis was aware that Plaintiff faced an imminent probability of harm based on notice of a specific danger to Plaintiff just before the assault.

### B. Plaintiff has not alleged any facts to suggest that the Oasis entities had a special relationship with her.

Plaintiff makes the conclusory allegation that she had a special relationship with the Oasis entities. Am. Compl. ¶ 306. She characterizes the relationship as a "*de facto* dormitory landlord"-tenant relationship. Am. Compl. ¶ 306. She does not allege that the Oasis had any relationship with Defendant Digges.

Without more, a landlord-tenant relationship is not a special relationship. *Yuzefovsky*, 261 Va. at 108, 540 S.E.2d at 140 (noting that the Supreme Court of Virginia


FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

9

1982.1133\ASG
4891-5638-0454 .v1

has "consistently rejected the contention that the relationship of landlord and tenant, without more, constitutes a special relationship such that a duty of care may arise with regard to the conduct of a third party").

Although Plaintiff tries to portray the Oasis as a "*de facto* dormitory landlord" and closely tied to Liberty University, courts have consistently rejected the proposition that colleges and universities have a special relationship with their students. *Leitner v. Liberty Univ., Inc.*, No. 6:19-cv-29, 2020 WL 7128972, 2020 U.S. Dist. LEXIS 228143, at *34 (W.D. Va. Dec. 4, 2020); *Owen v. Liberty Univ.*, No. 6:19-cv-7, 2020 WL 1856798, 2020 U.S. Dist. LEXIS 64579, at *30 (W.D. Va. Apr. 13, 2020); *Doe v. Va. Wesleyan Coll.*, 90 Va. Cir. 345, 359 (Norfolk June 20, 2015) (finding no special relationship with student raped in college dorm).

In *Doe v. Va. Wesleyan Coll.*, the plaintiff alleged that the college owed a duty to protect her from a rape in an on-campus dorm. 90 Va. Cir. at 346 & 351. Before the rape, the plaintiff attended an on-campus party sponsored by a college employee. *Id.* at 346. She alleged that college security officers observed underage drinking at the party and did nothing. *Id.* The plaintiff claimed that the college had a special relationship with her. *Id.* at 351.

The circuit court closely analyzed authorities from Virginia and other jurisdictions and concluded that there was no special relationship. *Id.* at 356–59. In particular, the court analyzed *Burns v. Gagnon*, where the Supreme Court of Virginia declined to find a special relationship between a high-school principal and a minor student on school grounds. *Id.* at 358–59 (analyzing *Burns v. Gagnon*, 283 Va. 657, 727 S.E.2d 634 (2012)). Noting this and the Supreme Court of Virginia's historical reluctance to expand the class



of "special" relationships, the circuit court held that the college did not have a special relationship with its student. *Id.*

Thus, Plaintiff's attempt to portray the Oasis as "*de facto* dormitory" is not sufficient to create a special relationship here.

### C. Even if there was a special landlord-tenant relationship, Plaintiff has not pleaded sufficient facts to suggest that the Oasis owed her a duty to protect her from sexual assault.

Again, the Supreme Court of Virginia has held that if the circumstances are sufficient to create a special relationship between a landlord and tenant, the imminent-probability-of-harm standard applies. *Yuzefovsky*, 261 Va. at 109, 540 S.E.2d at 141.

Plaintiff has not pleaded that the Oasis was aware—before Plaintiff was assaulted—that she was in imminent danger of being sexually assaulted by Digges. And she has not pleaded any facts to suggest as much. Accordingly, Plaintiff has simply failed to allege facts plausibly suggesting that the Oasis had "notice of a specific danger just prior to the assault." *Peterson*, 286 Va. at 357, 749 S.E.2d at 311.

For instance, although Plaintiff alleges that a "visibly inebriated Digges followed Plaintiff to her apartment room," Plaintiff does not allege that this was unwanted or that she signaled to anyone that this was unwanted. Am. Compl. ¶ 85. And certainly, the mere fact that Digges was intoxicated is not notice that a sexual assault is about to occur. *See Burns*, 250 Va. at 44–45, 458 S.E.2d at 450.

In addition, the facts alleged suggest that the physical encounter began as consensual. According to Plaintiff, "Digges began kissing Plaintiff." Am. Compl. ¶ 86. Plaintiff does not allege that she did not consent to this. Next, "Digges soon became aggressive," putting "Plaintiff's hand on his penis." Am. Compl. ¶¶ 86–87. This is the first



11

1982.1133\ASG
4891-5638-0454 .v1

moment that Plaintiff alleges that she did not consent. Am. Compl. ¶ 87. And although Plaintiff alleges that she did not consent to sexual intercourse, she does not allege that she did not consent to Digges following her into her room, locking the door, and kissing her.

At this point, Plaintiff and Digges were presumably alone in Plaintiff's locked private apartment room. Certainly, the Oasis had no way of knowing what was going on in that private room.

Plaintiff, however, faults the Oasis for failing to respond to "Plaintiff's screams." Am. Compl. ¶ 105. But Plaintiff alleges that when she "tried to scream for help," Digges "covered her mouth, choked, and strangled Plaintiff around her neck, and continued raping her." Am. Compl. ¶ 97. And though she claims that she screamed "when her screams weren't muffled," she does not allege that the Oasis could hear or should have heard any screams, could have or should have been able to locate the source of the screams, and could have unlocked the door to her apartment room and intervened to prevent the in-progress assault. Am. Compl. ¶ 97.

Tellingly, Plaintiff was only able to get away when she texted her friends, who came "[i]n response to the text message." Am. Compl. ¶¶ 101–03. Plaintiff does not allege that she called or texted anyone from the Oasis.

But more importantly, as *Burns* indicated, notice of an underway attack is irrelevant to whether a defendant owed a duty. 250 Va. at 45, 458 S.E.2d at 451. A defendant must have "notice of a specific danger just prior to the assault." *Peterson*, 286 Va. at 357, 749 S.E.2d at 311.



12

Plaintiff's allegations fall far short of establishing that the Oasis knew of a specific danger to Plaintiff just *prior to* the assault. Accordingly, even if the Oasis had a special relationship with Plaintiff, it owed her no duty to prevent or warn of the alleged assault.

**D. Even if there was a special relationship and the heightened standard applied, Plaintiff has not pleaded sufficient facts to suggest that the Oasis owed her a duty to protect her from sexual assault.**

Even if the Oasis had a special relationship with Plaintiff, and even if that relationship gave rise to the heightened duty to protect from "known or reasonably foreseeable harm," Plaintiff cannot prevail.

In *Peterson*, the Supreme Court of Virginia noted that even when the heightened duty applies, "[i]n only rare circumstances has this Court determined that the duty to protect against harm from third party criminal acts exists." 286 Va. at 359, 749 S.E.2d at 312. *Peterson* cited only *Taboada v. Daly Seven*, 271 Va. 313, 626 S.E.2d 428 (2006) for that proposition. *Id.*

In *Taboada*, the plaintiff was a hotel guest who was shot eight times in a hotel parking lot. 271 Va. at 318, 626 S.E.2d at 430. The Supreme Court of Virginia held that the plaintiff had stated sufficient facts to support his claim that the hotel owed a duty to protect him from the criminal conduct of a third party. *Id.* at 327, 626 S.E.2d at 435.

The motion for judgment in *Taboada*, however, alleged that in the three years before the attack, the hotel "had regularly contacted police 96 times to report criminal conduct including robberies, malicious woundings, shootings and other criminally assaultive acts." *Id.* Because of this history and the hotel's location in a high-crime area, the police had specifically advised the hotel that "its guests were at a specific imminent



13

risk for harm to their persons from uninvited persons coming into or upon its property." *Id.*

Here, Plaintiff does not allege any facts that suggest that the Oasis knew or reasonably should have known that she was in danger of being raped by Digges in her locked apartment room. And a single February 2021 physical assault and a rape committed at some unspecified point in time is not sufficient. *See, e.g.*, *Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627, 644 (W.D. Va. 2016) ("Five [sexual] assaults in the prior year in the dormitories of a college—even a small one, such as Bridgewater—is not the equivalent of 100 calls to the police in three years about possible criminal activity in the same parking lot. The five assaults, none of which are alleged to have been perpetrated by [the alleged assaulter], simply do not create the same level of foreseeability of harm.").

Plaintiff's proposed duty would require every university and student-housing proprietor to foresee and intervene whenever a consensual encounter in a private room turns from consensual to nonconsensual. That is not the law of Virginia.

**2. Plaintiff has not pleaded sufficient facts to plausibly suggest that the Oasis assumed a duty to protect her from the rape.**

Plaintiff claims—in conclusory fashion—that the Oasis "assumed a duty to provide reasonable security and safety on the premises of The Oasis." Am. Compl. ¶ 307. But Plaintiff does not say how this is so. And Plaintiff does not allege that the Oasis expressly assumed any specific duty to protect her from Digges's assault in her private apartment room.

A defendant cannot assume a duty to protect a plaintiff from a third party's criminal conduct unless the defendant "voluntarily undertook such duty by expressly



14

communicating his intention to do so." *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 136, 818 S.E.2d 788, 792 (2018). The defendant must expressly communicate to the plaintiff a "specifically described undertaking." *Id.* at 140, 818 S.E.2d at 795.

Thus, a duty to protect from a third party's criminal assaults cannot be impliedly assumed from conduct. *Id.* at 138–39 & 140, 818 S.E.2d at 794–95. And a duty to protect cannot arise from the taking of precautions. *Id.* at 140, 818 S.E.2d at 795. There must be an express undertaking to protect the plaintiff from the specific harm alleged. *Id.* at 141, 818 S.E.2d at 795.

In *Terry*, the defendants provided cab-dispatch services. *Id.* at 133, 818 S.E.2d at 790. The plaintiff's decedent was a cab driver. *Id.* A passenger killed him one morning after a dispatcher sent the decedent driver to pick up the passenger. *Id.* at 133–34, 818 S.E.2d at 791. The night before, the dispatch company had received a number of troubling calls from the assailant. The night dispatcher flagged the number and documented it as one meriting screening. When the same caller called for a ride the next morning, the morning dispatcher dispatched the decedent to the caller. *Id.* at 133–34, 818 S.E.2d at 790–91.

The plaintiff argued that the defendants—by undertaking to screen and document troubling calls—assumed at duty to protect or warn the decedent. *Id.* at 140, 818 S.E.2d at 794. The court rejected that theory, distinguishing the case from *Burns v. Gagnon*, where the high-school principal made an "express promise to take care of the impending fight." *Id.* at 136–37, 818 S.E.2d at 792–93 (analyzing *Burns v. Gagnon*, 283 Va. 657, 727 S.E.2d 634 (2012)). The court held that the mere taking of precautions to protect an open-ended universe of cab drivers was not sufficient. *Id.* at 140, 818 S.E.2d at 795. A duty to protect



15

from criminal assault can only be assumed by an express promise to do so. *Id.* at 141, 818 S.E.2d at 795. And because the plaintiff did not plead that the defendants expressly communicated an intent to protect the decedent from criminal assaults by passengers, the plaintiff's claim failed. *Id.*

Here, Plaintiff does not allege any facts to suggest that the Oasis expressly promised to protect Plaintiff (or anyone else) from sexual assault perpetrated by guests in their locked apartment rooms. Again, Plaintiff does not allege that Digges entered her apartment room or locked the door behind him without her consent or against her wishes.

Although Plaintiff seems to suggest that the Oasis impliedly assumed a duty to protect her from sexual assault by adopting rules prohibiting illegal conduct and open alcohol consumption, that is not sufficient to create a duty to protect Plaintiff from the intentional criminal acts of those in her locked apartment room with her consent.

Because Plaintiff has not pleaded facts plausibly suggesting that the Oasis expressly undertook to protect Plaintiff from Digges's assault, the Oasis did not assume a duty to her.

3. **Plaintiff has not pleaded any facts to suggest that the Oasis owed or breached any duty to protect her from stalking.**

Although Plaintiff alleges that Digges repeatedly approached her on campus, she does not allege that Digges was able to approach her at the Oasis. Rather, she simply alleges that "upon information and belief, Digges returned to The Oasis about a week and a half after the assault took place there." Am. Compl. ¶ 132. The allegation—made upon information and belief—does not even suggest that Plaintiff knew that Digges "returned to The Oasis." "Pleading 'upon information and belief' is appropriate when the factual



16

basis supporting a pleading is only available to the defendant at the time of pleading." *McClain & Co. v. Carucci*, No. 3:10-cv-65, 2011 WL 1706810, 2011 U.S. Dist. LEXIS 48404, at *9 (W.D. Va. May 4, 2011). Given this allegation, it can be assumed that Digges did not actually approach or have contact with Plaintiff at the Oasis.

Indeed, Plaintiff does not allege that Digges entered the Oasis or approached her there. The mere fact that Digges may have returned to the Oasis once, without more, is not sufficient to show any breach of duty to prevent Digges from stalking Plaintiff.

But more fundamentally, the Oasis did not owe Plaintiff any duty to prevent Digges's alleged stalking. Again, the Oasis had no special relationship with Plaintiff. But even if the Oasis had a special relationship with Plaintiff, she cannot prevail under either the imminent-probability-of-harm standard or the heightened known-or-reasonably-foreseeable-harm standard.

Under the imminent-probability standard, Plaintiff has not pleaded any facts that the Oasis was aware that Digges would "return[] to The Oasis" just before he did so. And under the heightened standard, Plaintiff has not pleaded any facts to suggest that the Oasis knew or should have known that Digges would "return[] to The Oasis."

Finally, Plaintiff has not alleged that the Oasis promised to prevent Digges from stalking her at the Oasis. Thus, the Oasis did not assume any duty either.

Accordingly, Plaintiff has not pleaded any facts to suggest that the Oasis owed or breached any duty to protect Plaintiff from Digges's alleged criminal stalking.


FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

17

1982.1133\ASG
4891-5638-0454 .v1

## Conclusion

Plaintiff has not pleaded facts to establish that the Oasis owed her a duty to protect her from rape in her locked apartment room or to prevent Defendant Digges from returning to the Oasis once after the alleged rape.

For these reasons, Plaintiff's claims against Oasis2000, LLC; Blue2000, LLC; Sage Communities, LLC; and LP Apartments, LLC should be dismissed with prejudice.

Respectfully submitted,

OASIS2000, LLC; BLUE2000, LLC; SAGE COMMUNITIES, LLC; AND LP APARTMENTS, LLC

/s/
Phillip V. Anderson (VSB No. 23758)
Andrew S. Gerrish (VSB No. 83914)
FRITH ANDERSON + PEAKE
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: (540) 772-4600
Fax: (540) 772-9167
panderson@faplawfirm.com
agerrish@faplawfirm.com
*Counsel for Oasis2000, LLC; Blue2000, LLC; Sage Communities, LLC; and LP Apartments, LLC*



1982.1133\ASG
4891-5638-0454 .v1

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

_/s/_____
Of Counsel



1982.1133\ASG
4891-5638-0454 .v1