CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/14/2022
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JANE DOE, *Plaintiff,* v. LIBERTY UNIVERSITY, INC., *et al.*, *Defendants.* | CASE NO. 6:22-cv-21 MEMORANDUM OPINION JUDGE NORMAN K. MOON |

Jane Doe, a former Liberty University student, alleges that a Liberty student ("John Doe") raped and assaulted her at an off-campus housing complex called The Oasis.

Her Complaint alleges eleven causes of action. Dkt. 52 ¶¶ 232–352. Plaintiff brings a negligence claim against the four LLCs involved in managing the off-campus housing complex: Oasis2000, LLC; Blue2000, LLC; Sage Communities, LLC; and LP Apartments, LLC (collectively, "Oasis Defendants"). Against Liberty, Plaintiff raises (1) deliberate indifference in violation of Title IX, (2) retaliation in violation of Title IX, (3) sex-based harassment and creation of a hostile environment in violation of Title IX, (4) negligence, and (5) intentional infliction of emotional distress. Plaintiff also seeks injunctive and declaratory relief against Liberty. Against John Doe, Plaintiff alleges (1) false imprisonment, (2) assault, (3) battery, (4) stalking, and (5) intentional infliction of emotional distress. Oasis Defendants and Liberty bring motions to dismiss. Dkts. 55, 57. Liberty does not move to dismiss the Title IX claims.

On Defendants' motions to dismiss, the Court determines that Plaintiff has failed to state a plausible claim for negligence and intentional infliction of emotional distress against Liberty and for negligence against Oasis Defendants. The Court will dismiss Plaintiff's claims for

injunctive and declaratory relief.

## I. Facts

The Amended Complaint alleges the following facts, which for purposes of the motions to dismiss must be assumed true. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (reiterating the appropriate standard of review).

Following a party in the common area of The Oasis on April 27, 2021, Plaintiff went to her room to change clothes. Dkt. 52 ¶¶ 75, 79, 84. John Doe followed her to her room, locked the door, and raped her. *Id.* ¶¶ 85–101. She managed to get to her phone and text a friend: "Come help me. [John Doe] won't stop." *Id.* ¶ 102. Her friends arrived and helped her escape. *Id.* ¶ 103. Within a few hours, she went to the Lynchburg General Hospital where she underwent a forensic examination and then filed a complaint with a Campbell County deputy sheriff. *Id.* ¶¶ 109–12.

### A. Facts Relating to The Oasis

The Oasis is a "students only" off-campus housing complex located on Liberty Mountain. *Id.* ¶¶ 16–18. The housing complex is on land purchased by Oasis Defendants from Liberty. *Id.* ¶ 41. Liberty Mountain is emblazoned with Liberty University's letters—"LU"—and houses several entities associated with Liberty. *Id.* ¶ 17. Liberty advertises The Oasis and allows students to submit lease applications through its website. *Id.* ¶ 21. It shuttles The Oasis residents to and from campus. *Id.* ¶ 23.

The Oasis is "almost entirely open-air," "does not have any locked gates," and "does not have any trained security staff or personnel on-site." *Id.* ¶¶ 46–47. Its standard lease states that "[o]pen alcoholic and/or glass containers are not permitted outside the apartment, Kegs are not allowed in apartments or on the premises," and "[p]ossession of alcoholic beverages by a minor

are not permitted in or around the apartment or premises." *Id.* ¶ 50. In January 2021, when Plaintiff signed a lease at The Oasis, she claims that she "was informed and led to believe that The Oasis was Liberty housing." *Id.* ¶¶ 30, 32. To qualify to live at The Oasis, she had to provide proof of enrollment at Liberty. *Id.* ¶ 33.

### B. Facts Relating to Liberty

Plaintiff reported the rape to Liberty University Police Department ("LUPD") the day after it occurred. *Id.* ¶ 117. The LUPD officer with whom she spoke stated that he had already heard about the incident. *Id.* ¶ 118. Plaintiff claims that the officer "suggested that Plaintiff speak with Liberty's Title IX office, but that 'nothing is going to be done about this' and that 'the office isn't great.'" *Id.* ¶ 119. The officer informed Plaintiff that LUPD would not investigate the incident because it was outside of its jurisdiction. *Id.* ¶ 120.

Later that day, Plaintiff received an email from an investigator, Sarah Mahle, in Liberty's Title IX Office ("Office of Equity and Compliance"). *Id.* ¶ 122. Mahle stated in part: "I am reaching out to you based on some information recently reported to our office. According to information we received, you may have been sexually assaulted by [John Doe], this incident may be in violation of Liberty University's Discrimination, Harassment, and Sexual Misconduct Policy." *Id.* Plaintiff scheduled an intake appointment with the Title IX Office for May 6, 2021. *Id.* ¶ 123. When Plaintiff went to the scheduled appointment, the Office told her that Mahle was busy and could not meet and then offered her a pamphlet on counseling services and group therapy. *Id.* ¶ 126. Later that day, she received an email from Mahle stating, "[w]e missed you this morning at the Office of Equity and Compliance / Title IX for your scheduled intake appointment at 9am EST." *Id.* ¶ 127. The email invited Plaintiff to call the Office to schedule another appointment and stated that "[i]f we do not hear from you by Monday, May 10, 2021, we

3

will set the matter aside at that time." *Id.* Plaintiff does not claim that she went to the office on that day, or otherwise contacted the office in the days that followed.

In the weeks following the rape, John Doe continued to contact and approach Plaintiff. *Id.* ¶ 131. She repeatedly told him to stop. *Id.* ¶133. Plaintiff reported his conduct to LUPD, which informed her that they could not act without a civil protective order. *Id.* ¶ 135.

On May 21, 2021, Plaintiff received an email from Scott Busby, an associate director of Liberty's Office of Community Life, about John Doe's "violation of [Liberty's] substance use policy." *Id.* ¶¶ 139, 141. Three days later, Plaintiff received an email from another associate director of the Office of Community Life, Leanne Gifford. *Id.* ¶ 142. Gifford informed Plaintiff that she was scheduled for a virtual meeting on May 26, 2021 "to discuss [her] alleged involvement with substances as a Liberty student." *Id.*

After some follow-up, Plaintiff met with Busby and Gifford. *Id.* ¶¶ 145–47. They asked Plaintiff about John Doe's "alleged substance use" at the party but refused to discuss the rape. *Id.* ¶¶ 148–50. They did, however, ask Plaintiff whether she had been drinking. *Id.* ¶ 151. After the meeting, Gifford emailed Plaintiff that she was required to take a five-panel hair test for alcohol and substance use. *Id.* ¶ 152. A day or two later, Plaintiff was informed that she was being placed on academic probation because of her poor grades from the semester. *Id.* ¶ 154.

Plaintiff again met with Busby and Gifford on June 3, 2021. *Id.* ¶ 157. The following day, Gifford emailed Plaintiff that she would be required to take a substance use test when she returned for the fall semester. *Id.* ¶ 158. Gifford informed Plaintiff that she was being disciplined for violating "Liberty's policy on Participation at a Social Gathering where alcohol [was] being served based on several photographs where [Plaintiff was] pictured with others who [were] holding alcoholic beverages in their hand." *Id.* ¶ 159. Plaintiff was issued a "Discipline Report,"

4

and received a punishment of fifteen hours of community service and fifteen "points" in Liberty's internal disciplinary system. *Id.* ¶ 160.

On June 8, 2021, Plaintiff followed up with the Title IX Office, saying that she continued to have "a huge issue with a guy on campus who assaulted [her]." *Id.* ¶ 163. She stated that she had tried talking about it with the Office of Community Life who would "not do anything about it." *Id.*

On June 11, 2021, Plaintiff underwent a drug test, which yielded negative results. *Id.* ¶ 164. But Gifford deemed it inadequate and ordered Plaintiff to take another drug test during the fall semester. *Id.*

A few weeks later, Plaintiff learned that John Doe remained a student at Liberty and would be residing in the same off-campus housing as Plaintiff during the fall 2021 semester. *Id.* ¶ 165. She asked Liberty to change her housing accommodations and set up a meeting for July 27, 2021 with the Title IX Office. *Id.* ¶¶ 166–67. At the meeting, she met with Mahle, who "did not seem to know details of the rape and assault." *Id.* ¶ 169. Mahle offered to request a "letter of apology" from John Doe. *Id.* ¶ 170. Mahle then walked through the formal investigatory process with Plaintiff. *Id.* ¶ 171. Plaintiff decided not to proceed with that process because it would require her to meet face-to-face with John Doe. *Id.* ¶¶ 172–73. Plaintiff then requested a "no-contact directive" be sent to John Doe, to which Liberty agreed. Liberty sent the no-contact directive to John Doe that same day, July 27. *Id.* ¶¶ 173, 175.

In early September, Gifford reached out again to Plaintiff and ordered her to take a drug test the following day. *Id.* ¶ 184. Plaintiff refused. *Id.* ¶ 186. About a week later, another Liberty administrator reached out and said that Liberty would "grant [her] grace in this instance and not require a test at this time." *Id.* ¶ 189. Plaintiff had no further contact with Liberty about the

assault and rape. *Id.* ¶¶ 190–91.

On December 30, 2021, Plaintiff learned she was being placed on academic suspension and would be suspended from Liberty for the spring 2022 semester. *Id.* ¶¶ 200–01. Plaintiff appealed the decision, but Liberty denied her appeal. *Id.* ¶¶ 205–12.

On January 10, 2022, Mahle emailed Plaintiff about her phone call "in July of 2021 regarding an Equity and Compliance/Title IX matter." *Id.* ¶ 213. Mahle stated "I am reaching out again based on some information recently reported to our office. According to the information we received, you may have been sexually assaulted." *Id.* Plaintiff tried calling Mahle to respond to her email and left a voicemail. *Id.* ¶ 215. Mahle did not call Plaintiff back. *Id.* Plaintiff subsequently enrolled in another university, out of state, where she is currently pursuing her college degree. *Id.* ¶ 217.

## II.   Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor, *King*, 825 F.3d at 212. A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

### III. Liberty's Motion to Dismiss

Liberty moves to dismiss two counts stated in the Amended Complaint: Count IV (negligence) and Count V (intentional infliction of emotional distress). Dkts. 57, 58. It also argues that Plaintiff's claim for injunctive and declaratory relief fails as a matter of law. Dkt. 58 at 12.

#### A. Negligence Claim

The Amended Complaint argues that Liberty was negligent for both failing to prevent the assault and failing to take remedial measures afterwards. Dkt. 52 ¶ 284. Liberty argues that it had no duty to Plaintiff to either prevent the assault or to take any measure afterwards. Dkt. 66 at 6–9. The Court agrees, finding that the Complaint does not state facts sufficient to establish that Liberty had a state law duty to Plaintiff.

Plaintiff's negligence claim against Liberty is governed by Virginia law. *See Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*, 892 F.3d 624, 646 (4th Cir. 2018). To state a claim for negligence, a plaintiff must establish the existence of a legal duty, a breach of this duty, causation, and damages. *See Fox v. Custis*, 372 S.E.2d 373, 375 (Va. 1988). "Whether [a legal]

duty exists is a pure question of law." *Yuzefovsky v. St. John's Wood Apartments*, 540 S.E.2d 134, 139 (Va. 2001) (internal citations omitted). "As a general rule, a person does not have a duty to warn or protect another from the criminal acts of a third person." *Commonwealth v. Peterson*, 749 S.E.2d 307, 311 (Va. 2013). The existence of a special relationship is an exception to this general rule. *Id.* Examples of special relationships include business-invitee and innkeeper-guest. *A.H. v. Church of God in Christ*, 831 S.E.2d 460, 468 (Va. 2019).

First, the Court finds no Virginia case law that has recognized a duty owed by a university to a student to take administrative action either before or after a sexual assault as claimed by Plaintiff. *See Doe v. Virginia Wesleyan Coll.*, 90 Va. Cir. 345, at *9 (2015) (noting that the "Virginia Supreme Court has not affirmatively decided whether to recognize the college/student [special] relationship"); *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 589 (E.D. Va. 2018) (noting "there appears to be no Virginia law establishing" a duty for a university to exercise special care during the disciplinary proceedings of a student); *see also Schieszler v. Ferrum Coll.*, 236 F. Supp. 2d 602, 609 (W.D. Va. 2002) ("[I]t is unlikely that Virginia would conclude that a special relationship exists as a matter of law between colleges and universities and their students."); *Leitner v. Liberty Univ.*, No. 6:19-cv-29, 2020 WL 7128972 at *34 (W.D. Va. Dec. 4, 2020) (same); *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 589–90 (E.D. Va. 2018) (same). Because the Court "is not empowered to recognize a new common law tort that has not been previously recognized by the Virginia courts," *Doe v. Washington & Lee*, 439 F. Supp. 3d 784, 797–98 (W.D. Va. 2020) (citing *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 348 (4th Cir. 1998)), Plaintiff's claim that Liberty owed her a duty to take administrative action either before or after a sexual assault fails because such a duty is not recognized in Virginia. *See generally Marymount Univ.*, 297 F. Supp. 3d at 590.

Second, Plaintiff argues that Liberty had a duty to Plaintiff via Oasis Defendants' actions, because The Oasis is a "*de facto*" student dormitory. *See* Dkt. 52 ¶ 276. This claim fails as well. As mentioned above, Liberty does not have a special relationship to Plaintiff solely by virtue of being the university she attended. Now, assume arguendo that a close relationship exists between Liberty and Oasis Defendants such that Oasis Defendants' duties became Liberty's. Even then, Oasis Defendants, as described below in more detail, had no duty to Plaintiff. Thus, Plaintiff has failed to plead facts sufficient to establish that Liberty owed Plaintiff a duty, and as such, the Court will dismiss Count IV against Liberty.

### B. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must allege that (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (4) the resulting emotional distress was severe. *See Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974); *Faulkner v. Dillon*, 92 F. Supp. 3d 493, 500 (W.D. Va. 2015).

IIED claims are generally "'not favored'" in Virginia. *Ruth v. Fletcher*, 377 S.E.2d 412, 415 (Va. 1989) (quoting *Bowles v. May*, 166 S.E. 550, 557 (Va. 1932)). For emotional distress claims, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991) (internal quotation marks omitted). For example, courts have found extreme or outrageous conduct (1) when a teacher continuously bullied and humiliated her ill student and (2) when an innocent man was presented as a suspect in a child molestation case. *Crittendon v. Arai*

*Americas, Inc.*, No. 2:13-CV-567, 2014 WL 31490, at *6 (E.D. Va. Jan. 3, 2014) (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999); *Womack*, 210 S.E.2d at 148).

In the case at hand, the IIED claim fails on the second element. Plaintiff alleges that Liberty "failed its Title IX obligations" and offered "no accommodations" following her assault. *See* Dkt. 52 at 122, 127, 167–68, 213; Dkt. 66 at 19. These allegations, at most, amount to negligence or a failure to act rather than conduct "so outrageous . . . as to go beyond all possible bounds of decency." *Russo*, 400 S.E.2d at 162; *see e.g.*, *Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627 (W.D. Va. 2016) (Dillon, J.) (finding that a plaintiff's allegations regarding the college's alleged failure to comply with Title IX could not meet the extreme conduct standard required to state an IIED claim). Because the Complaint fails to allege extreme or outrageous conduct sufficient to support an IIED claim, the Court will dismiss Count V against Liberty.

### C. Request for Injunctive and Declaratory Relief

Plaintiff seeks a permanent injunction prohibiting Liberty from "engaging in . . . discriminatory, harassing, and retaliatory practices." Dkt. 52 at 55. The injunction would require, among other things, "a three-year monitoring of all Title IX complaints made to . . . Liberty" and Liberty "fully investigat[ing] conduct that may constitute sex-based harassment." *Id*.

To establish Article III standing, a plaintiff "must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To seek injunctive relief, Plaintiff must show "a real or immediate threat that [she] will be wronged again." *Id*. (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "[P]ast wrongs do not in themselves amount to that real and immediate

threat of injury." *Doe v. Rector and Visitors of Univ. of Va.*, No. 3:19-cv-70, 2020 WL 5096948 at *4 (W.D. Va. Aug. 28, 2020) (citation omitted).

Plaintiff lacks standing to seek the requested injunctive relief because she no longer attends Liberty and has no stated intent to return. Dkt. 52 ¶ 217. Plaintiff has failed to establish (1) a "real and immediate threat of injury" to herself, *Doe*, 494 F. Supp. 3d at 373 (citation omitted), and (2) redressability between the harm alleged and the requested injunctive relief, *see California v. Texas*, 141 S. Ct. 2104, 2115 (2021). Thus, the Court will dismiss Plaintiff's demand for a permanent injunction.

Because Plaintiff stipulated to the dismissal of her claim for declaratory relief, *see* Dkt. 66 at 23 n.6, the Court also will dismiss Plaintiff's request for a declaratory judgment, *see* Dkt. 52 at 56.

### IV. Oasis Defendants' Motion to Dismiss

Oasis Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 55. They allege that they owed no duty to Plaintiff, and that the Court must therefore dismiss the only count against them, which is for negligence. Dkt. 56 at 1. The Court agrees. Plaintiff has failed to state a claim for negligence against Oasis Defendants.

Plaintiff's negligence claim against Oasis Defendants is governed by Virginia law. *See Lipitor (Atorvastatin Calcium) Mktg.*, 892 F.3d at 646. The Supreme Court of Virginia has "consistently rejected the contention that the relationship of landlord and tenant, without more, constitutes a special relationship such that a duty of care may arise with regard to the conduct of a third party." *Yuzefovsky*, 540 S.E.2d at 140 (citing *Klingbeil Mgmt. Grp. v. Vito*, 357 S.E.2d 200, 201 (Va. 1987); *Gulf Reston v. Rogers*, 207 S.E.2d 841, 845 (Va. 1974)).

11

Here, Plaintiff alleges that Oasis Defendants had a duty of care to Plaintiff because they had a special relationship to Plaintiff as a *de facto* student dormitory. Dkt. 64 at 11. Plaintiff cites *Wilson v. Commonwealth*, 17 Va. Cir. 144 (Chesterfield Cnty. 1989) to support the proposition that a special relationship exists between a student and a university. *Id.* at 11. However, other courts have made contrary findings to *Wilson* on the general issue of whether a special relationship exists between a student and a university. *See, e.g.*, *Schieszler*, 236 F. Supp. 2d at 609 ("[I]t is unlikely that Virginia would conclude that a special relationship exists as a matter of law between colleges and universities and their students."); *Leitner*, 2020 WL 7128972 at *34 (same); *Marymount Univ.*, 297 F. Supp. 3d at 589–90 (same).

Additionally, Plaintiff provides no case where any court has treated a private apartment complex—albeit one with a close relationship with a particular university—as a *de facto* student dormitory. *See generally* Dkt. 64 at 11–17. And the Court lacks the power to "recognize a new common law tort that has not been previously recognized by the Virginia courts." *Washington & Lee*, 439 F. Supp. 3d at 797–98 (citing *Broussard*, 155 F.3d at 348). Thus, the facts alleged in the Amended Complaint are insufficient to plausibly establish the existence of a special relationship between Oasis Defendants and Plaintiff.

Plaintiff asserts in the alternative that, by undertaking to "provide housing services exclusively for university students," Oasis Defendants "assumed the duty to exercise reasonable care to protect Liberty students and to provide a reasonably safe and secure premises specifically for those students." Dkt. 64 at 23. But a defendant does not assume a duty to protect a plaintiff from a third party's actions unless the defendant "voluntarily undert[akes] such duty by expressly communicating his intention to do so." *Terry v. Irish Fleet, Inc.*, 818 S.E.2d 788, 792 (Va. 2018). The defendant must expressly communicate to the plaintiff a "specifically described

undertaking." *Id*. at 795. A duty to protect from a third party's actions cannot be impliedly assumed from conduct. *Id.* at 794–95. And a duty to protect does not arise from taking precautions. *Id*. at 795. The Amended Complaint here does not allege any specifically described undertaking. *See generally Terry*, 818 S.E.2d at 792. At most, it only describes that Oasis Defendants undertook certain precautions with respect to its residents' conduct. *See* Dkt. 52 at 9–13. Thus, Plaintiff's allegations of fact are insufficient to sustain a negligence claim against Oasis Defendants.

### V. Conclusion

In sum, the Court concludes that Plaintiff has failed to state a plausible claim for negligence and IIED against Liberty and for negligence against Oasis Defendants. As such, Counts IV, V, and VI will be dismissed from the Complaint. Because Plaintiff has not alleged any other counts against Oasis Defendants, the Court will dismiss them from the case. Plaintiff's claims for injunctive and declaratory relief also will be dismissed from the Complaint.

The Clerk of Court is directed to send this Memorandum Opinion to all parties in the case.

Entered this  14th  day of October, 2022.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE